STATE of Missouri, Respondent,

v.

Robert W. YOUNG, Appellant.

No. 52907.

Supreme Court of Missouri,
Division No. 1.

March 11, 1968.

sion of burglar tools (§ 560.115, RSMo 1959, V.A.M.S.), with a sentence of four years by the court, defendant appeals. Specifically, the information charged possession of "a coal chisel, an electric drill, one extension cord, one flashlight, one pry bar, two pair of gloves, several drill bits, one ball pean hammer and one large hammer, several crescent wrenches and several screw drivers." Defendant's primary contention is that the court erred in overruling his motion to suppress certain evidence found in a search of his car by the police which was the basis of his conviction. We agree with his position and reverse the judgment.

The facts are substantially as follows: On January 2, 1967, about 12:30 a.m. defendant and his passenger, Eugene Janzer, both transients, were northbound on Main Street in Joplin, in defendant's automobile, a 1950 Cadillac. Police Officer Norman Boyd, who was southbound on Main at Seventh Street, noticed that defendant's car did not have a license plate in the usual place on the rear bumper. Boyd followed defendant's car and stopped it with his red light near Fifth and Main, about two blocks north of where he first observed it. Defendant was driving at a reasonable speed and was not violating any Joplin traffic ordinances. Defendant and his passenger were unknown to Officer Boyd. Boyd informed defendant why he was stopping him and asked for his driver's license and also for his papers for the vehicle. Defendant showed Boyd his Utah driver's license and the sales papers on the car, both of which were in order. According to these papers the car was purchased in Salt Lake City, December 13, 1966. The car had no license plate but there was a Utah temporary motor vehicle registration permit, approximately 11 x 5 inches in size, mounted in the rear window of the car, which Officer Boyd had not noticed until defendant called it to his attention. This permit was still in force and it was made out for defendant's vehicle. When defendant got out of the car to hand Officer Boyd his papers, the interior light went on and Boyd

Norman H. Anderson, Atty. Gen., Jefferson City, Edward J. Wynne, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Dean S. Johnston, Joplin, for appellant.

SEILER, Judge.

This case involves a question of search and seizure. From a conviction by a jury upon an information charging prior felonies and a current offense of unlawful posses-

saw an electric drill and two small screwdrivers lying on the rear floor.

According to Officer Boyd, Young was neat in appearance, had not been drinking, was polite and had not committed any felony that Boyd knew of. Boyd was not in pursuit of any felon at the time and had no report of any felony which had been committed that evening within his beat.

About the time Boyd was checking defendant's papers, another Joplin policeman, Officer Lawless, southbound on Main Street in a police car, with a police dog, happened by and was flagged down by Officer Boyd. Boyd had Lawless look over defendant's papers, "wondering whether they were * * in order". Lawless could not find any irregularities. A third Joplin policeman, Officer Gunn, was also present. He stood on the sidewalk, keeping defendant's passenger under observation. Boyd asked Young what type of work he did and where, but was unable to recall defendant's answer or explanation for the tools, except defendant said they were his. Defendant's testimony on the hearing on the motion to suppress was that he was an electrician, a trade which he had learned in rehabilitative training while an inmate of the Utah State Penitentiary. He produced a card from "the Board" showing 1056 hours of "industrial electricity". Boyd said defendant told him he was going to Kansas City. Defendant testified they were "just passing through" Joplin on U.S. 66 en route to Kansas City, but "had to go through Pittsburg, Kansas". Officer Boyd asked defendant if he would open the trunk. Boyd said that defendant said, "It is silly", that "He didn't do it right at first, just made an expression as if he didn't exactly want to, but which he did on his own free will", and then took the key from the ignition switch and opened the trunk. Defendant said he agreed to open the trunk, but not until he had told Officer Boyd he did not want to open it to begin with, that he "didn't like people looking through my private stuff", but the police said "We are going to be looking at them now whether you like it or not", and rather than have the car "mistreated", defendant opened the trunk. While Officer Boyd was going through the trunk, Officer Lawless was searching the car. In the trunk there was a tarp with a spare tire, a tire tool and a bar, pointed on one end and U-shaped and flat on the other. There was also a small trunk with clothing, apparently belonging to the passenger, several cans of oil, and a battery box, containing the following: a twenty inch screwdriver, four pairs of pliers, two eight inch crescent wrenches, four open end wrenches, a chuck for an electric drill, a piece of wire, a lock washer, and a nut. Officer Lawless searched the glove compartment and underneath the front seat. Under the front seat he found a sledge hammer with a short handle, a large screwdriver and a ball peen hammer. In the glove compartment he found a green electric cord, three bits for an electric drill, two screwdrivers, three pairs of pliers and one coal chisel. Later in the day at the police station, another officer also found under the front seat a chrome flashlight, still another screwdriver, and a pair of gloves. The contents of the box, the glove compartment and the various tools were marked as exhibits and shown the jury.

Officer Boyd testified that when he first talked to defendant he did not place him under arrest. He said " * * * the minute I observed the tools in the trunk of the car I placed him under arrest for possession, in the possession, the possession of burglary tools. That is when Officer Lawless went around to the passenger side and looked in the front of the vehicle." Prior to that time Officer Boyd said he had not arrested Young for any charge. Boyd asked defendant whether he had any previous criminal record but not until after he had placed defendant under arrest. The police also arrested defendant's passenger on a charge of possession of burglar tools, but later released him.

Officer Lawless heard Officer Boyd place defendant under arrest. This was after the trunk had been opened and when

Boyd and defendant were standing about six feet to the rear of the car. Lawless did not know of any previous record on Young's part at this time, either.

At the trial the state put in evidence defendant's first degree burglary conviction in Arizona in 1958, from which he was paroled in 1960, a conviction for second degree burglary in Utah in 1960, a conviction for assault in Utah in 1961, and a conviction for escape from the Utah State Penitentiary in 1962. He was released from the Utah penitentiary December 12, 1966.

In ruling on the motion to suppress the trial court stated " * * * when he [the officer] asked for identification, the driver license, he was enabled to see tools that are commonly used in burglary cases, and that on the opening of the trunk he then saw other tools which were suitable to use as burglary tools, and at that time he arrested the defendant, and after that the car was searched. I think the motion to suppress will be overruled."

Officer Boyd was justified in halting defendant's vehicle, because it appeared the car was being operated without a license, which would be a misdemeanor under § 301.130(5) and § 301.440, RSMo 1959, V.A. M.S. Whether this halting was a technical "arrest" or not, once halted, however, the question about the license was resolved in defendant's favor. Defendant produced a valid driver's license and valid ownership papers on the car and when Officer Boyd told defendant why he was being stopped, defendant pointed out the temporary permit in the rear window of the car, which Officer Boyd had failed to observe. The

permit appeared to be valid and in order. At this point, therefore, there was no more investigation needed so far as the suspected offense for which defendant was stopped was concerned. We need not attempt a general rule as to just how much searching of a vehicle can lawfully be done when an automobile is stopped for a traffic or license violation, as it is clear no further searching was justified on the basis of the supposed license violation. The justification for any further detaining of the defendant on this ground vanished when it became apparent that the car was not being operated without a license, as Officer Boyd had first suspected. And there is no claim made by the state that the officers' subsequent actions were in any way connected with any further investigation of the license matter.

 Although Officer Boyd saw the electric drill and two screwdrivers on the floor of the car when the door was opened, the situation at the moment was that he did not know of any recent burglary, he did not know defendant or his companion, he knew nothing of any previous criminal record of defendant, defendant had not been drinking, his manner was "real nice" and the vehicle when halted was proceeding on a route consistent with the avowed destination of defendant and companion. The electric drill seen by Officer Boyd was exhibited to this Court during the oral argument. It is the ordinary type, hand size, portable electric drill which is available in any hardware store. The two screwdrivers are not before us, but apparently they are ordinary screwdrivers.[1]

---

1. The record is not clear on whether Officer Boyd saw any tools other than the electric drill and the two screwdrivers when defendant got out of the car. In passing on the motion to suppress the trial court made no finding on this point. Defendant carried forward in the trial his objections to the admission in evidence of the tools and from examination of the entire record we conclude that what Officer Boyd saw was the electric drill and the two screwdrivers. This is also the position taken by both the defendant and the state in their briefs. At the hearing on the motion to suppress, Boyd first said, "I noticed on the floor board some tools, an electric drill, and a couple of screw drivers and a hammer", that "They were lying with the drill on the rear floor". Later he said, " * * * and I believe a little short hammer with a heavy metal bill on it." Officer Lawless at the hearing testified the tools he saw on the back seat floor were the drill

We are unwilling to say that the mere presence of these particular tools in the car, under the circumstances then before Officer Boyd, constituted the commission of a felony in his presence by defendant, or provided a reasonable basis for suspicion that defendant was guilty of such offense. While such tools can be and are, according to the evidence, used by burglars, to be criminal the tools have to be breaking tools and the possession of such tools would have to be accompanied by a burglarious intent, State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938, 943, 945, 103 A.L.R. 1301. The evidence fails to show any outward indication of such intent at the time Officer Boyd observed these tools on the floor of the car. As seen from the facts stated earlier, any circumstances known to Officer Boyd from which he could reasonably infer such an intent on the part of defendant and his companion did not exist.

It is significant that Officer Boyd made no arrest at this point (an arrest at this point would have been unlawful, State v. Cuezze (Mo.Sup.) 249 S.W.2d 373, 375) but instead embarked on a general exploratory search.[2] He had no knowledge there was anything offensive to the law to be found and defendant had done nothing to cause Boyd to believe he was concealing anything. Boyd wanted to look in the trunk and asked defendant to open it. Although defendant got the keys from the ignition and personally opened the trunk it is apparent from what the officers said the defendant said, aside from what defendant's own unrebutted testimony was on the point, that this did not constitute free and voluntary consent on the part of the defendant under the circumstances.[3] When this happened there were three Joplin policemen, their automobiles, and police dog present representing the authority and compulsion of the law. Under the circumstances defendant was doing no more than submitting to the will of the police in what must have appeared to him to have been a firm determination on the part of the authorities to look in the trunk.[4] It was not until after

and the screwdriver. At the trial Officer Boyd testified, "I observed an electric drill and two small screwdrivers" and identified these as exhibits 5, 6, and 7. He made no mention of also seeing a hammer and said the drill and screwdrivers were all he could recall seeing. Officer Lawless testified he searched under the front seat and there found a ball peen hammer, a sledge hammer with a short handle, and a large screwdriver. He identified the two hammers as exhibits 16 and 17 and said they had been tagged by Officer Boyd. The state put in evidence all the tools found by the officers. The only hammers are exhibits 16 and 17 and the information refers only to two hammers. We conclude, therefore, on the whole record, that the hammer with the "heavy metal bill on it" (which is a type of peen hammer, according to the illustrations in Webster's Third New International Dictionary) mentioned by Officer Boyd at the hearing is actually the hammer found under the seat by Officer Lawless and that all that was in Boyd's view when the door was opened were the electric drill and the two screwdrivers.

2. It is declared in State v. Williams, 328 Mo. 627, 14 S.W.2d 434, 435, that an officer has no right to search for evidence in a manner prohibited by constitutional provisions even though he knows the evidence is there, that "his search is illegal because its very purpose is to discover evidence".

3. The trial court made no finding as to whether there was consent on the part of defendant to open the trunk. The court evidently proceeded on the theory the officer was justified in making the search regardless of consent.

4. See State v. Owens (banc) 302 Mo. 348, 259 S.W. 100, 102, 32 A.L.R. 383, where the court said: "* * * If an officer appears at a person's home, and in his official character demands the privilege of searching the premises, the owner of the premises who yields peaceably and silently to the official demand is as much under constraint as if he had forcibly resisted official interference"; also State v. Redding (Mo.Sup.) 357 S.W.2d 103, 108. See also United States v. Novero (D.C.E.D.Mo.) 58 F.Supp. 275, where alcohol tax unit

Boyd saw what was in the trunk that he placed defendant under arrest for illegal possession of burglar tools. The fact that evidence was discovered in the search which would have justified the arrest does not make the search lawful, State v. McBride, 327 Mo. 184, 37 S.W.2d 423, 425; State v. Morice (Mo.Sup.) 79 S.W.2d 741, 742. Nor does the fact the defendant was in or about his automobile dispense with the need for probable cause, Henry v. United States, 361 U.S. 98, 104, 80 S.Ct. 168, 4 L.Ed.2d 134.

 Officer Boyd did not have probable cause to search the trunk or the automobile. This was an unreasonable search and seizure under the facts before us, and therefore a violation of the constitutional provisions, which make no distinction between the guilty and the innocent. Defendant's motion to suppress should have been sustained. The conviction must be set aside because of the improperly obtained evidence, Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

 Without admission of the fruits of the unlawful search of the car and trunk, should the case be remanded for a new trial on what is left, if the state is so advised? Apparently the state put in all the

evidence it had. Evidently defendant made no statements beyond what appears above. Previous convictions are admissible in a case of this sort not " * * * to prove the ultimate fact of his guilt, but only as throwing light on his intent in carrying the tools * * *", State v. Hefflin, supra, 89 S.W.2d 1. c. 946. Here the previous convictions constitute all the evidence there is on intent. The last two convictions had nothing to do with burglary and the first two were not very close in time. The defendant was not in a disreputable neighborhood. There was no proof that defendant's associate, Janzer, was a criminal. Defendant made no effort to resist or flee and the electric drill and the two screwdrivers which Officer Boyd saw were not in a secret place. We have found no case which upholds conviction of possession of burglar tools on mere possession of tools of such equivocal nature as an electric drill (if it, without a bit, is a breaking tool) and two screwdrivers, without more on which to base possession with a burglarious intent than appears here. There is not enough here after the illegally obtained evidence is removed, to allow a jury to believe beyond a reasonable doubt that defendant intended to commit a burglary, People v. Taylor, 410 Ill. 469, 102 N.E.2d 529.[5] Furthermore, if a conviction can stand merely on a showing of posses-

---

agent asked defendant to unlock the smokehouse and garage and he did so. The court held that the search of the smokehouse and garage was without probable cause and defendant did not waive his constitutional rights by peacefully complying with the request of the agent to unlock the building. See also Scurlock, Searches and Seizures in Missouri, 29 U. of K.C.L.Rev. 242, 295: " * * * There is a wide difference between consent and submission. Mere acquiescence in the apparent authority of an officer will not be considered consent. The problem is to determine whether the defendant really consented or whether he merely acquiesced * * *", and 79 C.J.S. Searches and Seizures § 62, p. 820, "In order to constitute a waiver it must be clearly shown that consent given to an otherwise illegal search was voluntary * * * and not given merely to avoid resistence. * * *"

5. It was discovered when defendant and his companion were searched at the police station that defendant had only two dollars and his companion had none. Without considering whether this fact would properly be admissible in evidence under the circumstances, we do not see where it adds anything to the state's case on intent. We cannot say that lack of funds shows a general intent to commit a burglary. It might show motive if the necessary intent existed, but intent and motive are not the same. " ' * * * Motive is the moving cause which induces action; it has to do wholly with desire. Intent is the purpose of design with which an act is done, and involves the will * * * ' " State v. Hughes, 344 Mo. 116, 125 S.W.2d 66, 70; 22 C.J.S. Criminal Law Sec. 31(1), p. 107.

sion of tools which can be used for legitimate purposes as well as for burglary, together with proof of a prior conviction, no released convict could ever safely be in possession of working tools no matter how honest his actual intentions might be. Numerous honest trades would thereby be closed to a convict who was attempting to support himself lawfully, which we do not believe the legislature intended to be the result of § 560.115, supra.

The judgment is reversed and defendant ordered discharged.

HENLEY, P. J., concurs in result.

STORCKMAN, J., dissents.