**STATE of Missouri, Respondent,**

v.

**Stanley PRUITT, Appellant.**

**No. WD32910.**

Missouri Court of Appeals,
Western District.

Dec. 14, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Feb. 1, 1983.

Richard A. Fredman, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Jay A. Daugherty, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P.J., and WASSERSTROM and KENNEDY, JJ.

WASSERSTROM, Judge.

Defendant was convicted by jury of attempting to steal a Camaro automobile in violation of Section 570.030 and Section 564.011 (all sectional references in this opinion are to RSMo 1978). Upon a finding by the trial court that defendant was a persistent offender, sentence was imposed of five years imprisonment, from which defendant appeals. We affirm.

At about 9:00 a.m. on July 18, 1980, Jackie Barry parked her Camaro automobile at her place of work in Columbia, Missouri, and locked the car. She returned at 1:00 p.m. to find the door unlocked, marks around the lock, the ignition broken, parts lying on the floor of the car, the ignition key being incapable of insertion, and her wallet missing. She reported the incident to the police and had her car towed to a Chevrolet agency for repair.

On that same day, Officer Deakins received a report of a disturbance of the peace along with a description and license number of a car which had been seen leaving the disturbance. At about 1:00 p.m., Deakins identified an Oldsmobile as the car described and stopped the Oldsmobile which was being driven by defendant. Defendant had no driver's license, but gave his name as Stanley Betz of St. Louis, Missouri. About that time, Deakins received a call to

the effect that the suspect car and its driver had not been involved in the disturbance, and therefore Deakins released defendant to go his way.

Within a very short time Deakins received the results of a computer check which revealed that there was no driver registration under the name Stanley Betz and that the license carried by the Oldsmobile had been issued to a different vehicle. Deakins was able to locate the Oldsmobile on a ramp to the highway. He stopped the Oldsmobile and placed defendant under arrest. At that time, looking into the Oldsmobile, he saw in plain view an assortment of tools which included needle nosed pliers, vise grips, a screwdriver and a dent puller.

Deakins proceeded to have defendant lock his car and then took defendant to the police station where he was questioned. Deakins did not believe that defendant was telling the truth during the interrogation. Although Deakins did not know at that time about the attempted theft of the Camaro automobile, he did know that there had been a recent rash of stolen automobiles in which the ignition had been pulled with the use of a dent puller. He therefore went back to the Oldsmobile which was still parked in a locked condition on the ramp to the highway, and removed the tools which he had seen on the front seat for further investigation.

The dent puller and the broken ignition from the Camaro were delivered to the state highway patrol crime laboratory for study. Examination of the broken ignition showed that it had a broken screw and examination of the dent puller showed that part of a screw was in it. A comparison of the two parts showed that the portion of the screw in the dent puller came from the broken screw from the Camaro ignition.

Defendant did not testify. His principal witness was his girlfriend who testified to the effect that other persons had made use of the Oldsmobile during the morning of July 18, 1980.

## I.

For his first point defendant argues that the dent puller was seized illegally from the Oldsmobile. That contention lacks merit. The Oldsmobile had been stopped and defendant was arrested properly because of false automobile license and lack of driver's license. During the course of that arrest Officer Deakins saw the dent puller in plain view. A dent puller is a tool commonly used in automobile thefts and had been used in a number of recent car thefts in Columbia. Defendant was a suspicious person, from out of town, who had given a false name and who had false license plates on the car he was driving. These circumstances gave ample reasonable grounds for seizure of the dent puller. *State v. Whitnah*, 493 S.W.2d 32 (Mo.App.1973); *State v. Cromwell*, 509 S.W.2d 144 (Mo.App.1974).

The fact that the dent puller might be used for innocent purposes does not prevent proper seizure. Under suspicious circumstances, even innocent looking objects may be legally seized. *State v. Hall*, 534 S.W.2d 508 (Mo.App.1976). Nor does it matter that there was an interval of time between Deakins' first seeing the dent puller and his return from the police station to seize that item. Once evidence is seen under such circumstances that it may be taken by the police, the police may at a subsequent time take "a second look." *State v. Jines*, 539 S.W.2d 801 (Mo.App. 1976); *State v. Achter*, 512 S.W.2d 894 (Mo. App.1974).

## II.

Defendant's second point is that the jury should have been instructed on tampering second degree under Section 569.090, and his third point is that the jury should have been instructed on property damage third degree under Section 569.120. In each instance, he argues that these are lesser included offenses to the offense charged and therefore the court was obligated to instruct the jury thereon. These two points are covered by the same principle of law and can be discussed and disposed of together.

Section 556.046–2 provides: "The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and con-

**372**

victing him of the included offense." *See also State v. Deloch,* 628 S.W.2d 954 (Mo. App.1982); *State v. Sturgell,* 530 S.W.2d 737 (Mo.App.1975); *State v. Neighbors,* 613 S.W.2d 143 (Mo.App.1981).

The evidence here offered by the state supported the charge of attempted stealing, and it supplied no basis upon which to infer that defendant was merely attempting to tamper with or damage the Camaro. The only reasonable choice given the jury under the evidence as a whole was either: (1) to find that defendant had attempted but had failed to steal the Camaro; or (2) that the attempt had been made by someone else and defendant was wholly innocent of any wrongdoing.

In this state of affairs, there was no room for the jury to find defendant innocent of the offense charged but guilty of either tampering or property damage. He was either to be convicted of an attempt to steal or he should have been acquitted. The court did not err in refusing to instruct on the alleged lesser included offenses.

There being no error, the judgment is affirmed.

All concur.