**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Gary Lindell FERGUSON,
Defendant-Appellant.**

**No. 46556.**

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 21, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 28, 1984.

Application to Transfer Denied
Nov. 20, 1984.

John D. Dwyer, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Janet E. Papageorge, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Presiding Judge.

Gary Lindell Ferguson appeals from a judgment pursuant to a jury verdict convicting him of the Class D felony of attempted stealing of a motor vehicle, § 564.-011 RSMo.1978. He was sentenced as a persistent offender under § 558.016(3) RSMo.1978 to ten years in the custody of the Missouri Department of Corrections. The judgment is affirmed.

The defendant contends the trial court erred in: 1) overruling his motion to suppress evidence of items seized from the trunk of the automobile and from his wallet; 2) admitting evidence of an unrelated crime possibly committed by the defendant; and 3) failing to instruct on the lesser included offense of tampering, second degree.

At approximately 5:30 a.m. on June 13, 1981, Henry M. Garbo looked out his apartment window in the Raintree apartment complex to check on his car, a charcoal gray 1980 Chevrolet Camaro Z–28. Garbo saw two black men, one inside his Camaro who was later identified as the defendant, and one standing between Garbo's automobile and a white Corvette. The two men fled in the Corvette upon seeing Garbo at his window.

Garbo reported the incident to the police whose investigation disclosed that the Camaro had scratches on the passenger door and that the lock had been twisted and broken.

Two days later during the early morning hours of June 15, 1981, Garbo testified that he again looked out his apartment window. This time his Camaro was missing. Garbo reported the car as stolen to the police.

On June 27, 1981 Detective Dennis and Officers Rainwater and Billings, of the St. Louis County Police Department, were conducting a surveillance at the Raintree apartment complex because of the numerous automobile thefts reported from the area. At approximately 4:00 a.m. Detective Dennis, from a vacant apartment window, observed a dark colored 1974 Buick Regal pull into a nearby parking lot next to a white Corvette. A black male exited the Buick, peered into the Corvette, and returned to the Buick which was then driven off.

Detective Dennis radioed to the other officers the suspicious activities of the defendant's car. Within a short time Officers Rainwater and Billings observed the Buick back in next to a dark colored Trans Am in another one of the apartment parking lots. They saw no one get out of the Buick and when the officers drove onto the lot in their unmarked police vehicle, the Buick pulled away.

Officer Rainwater notified Officer Hoag, who was in a marked police car, to stop the Buick. The automobile was pulled over outside the apartment complex on an Interstate 270 entrance ramp. Identification was taken from the two black males, including the defendant, and a black female, who occupied the Buick.

The defendant and the other male occupant of the car were taken into custody based on numerous wanteds and outstanding warrants which were disclosed by a routine computer check. A license check made on the license plate of the Buick disclosed that the license plate was wanted because it belonged to a different vehicle. The female passenger was also taken into custody, although from the record, the reason is unclear.

The Buick was searched at the roadside after the arrest. Nothing was found in the passenger compartment. The officers next searched the trunk, which already had its lock punched out, and discovered an attache case and a suede-like briefcase. The officers searched these closed containers and found sets of license plates, a dent puller, a drill and other miscellaneous tools.

These items were seized by Officer Hoag. Testimony revealed that several of the tools, although having legal uses, could be used to steal motor vehicles. Officer Rainwater testified at the hearing on the motion to suppress evidence that he searched the trunk because the individuals were wanted for auto theft, their suspicious behavior, and because of the numerous auto thefts in the area.

The Buick was later towed to the police station where an inventory search was made. The inventory sheet indicated that there was "nothing taken as evidence" as a result of the inventory search.

During the booking process at the police station, the defendant was searched and a paper containing a list of automobiles was discovered in his wallet. The list included an " '80 or '81 gray Z–28," that had been crossed out with "OK" noted next to it.

On July 10, Garbo identified the defendant from a photo lineup as being the individual he saw in his Camaro the morning of June 13.

The only defense witness was Angela Gray, the female passenger in the Buick. She testified that the Buick belonged to her, that they were looking for a friend's apartment on the morning of June 27 and that the tools belonged to the defendant, who was an automobile mechanic.

In the defendant's first point he alleges that the trial court erred in denying his motion to suppress evidence because both the search for and seizure of the tools from the automobile trunk and the list of automobiles from his person were unlawful for the reason that there was no reasonable suspicion to stop the automobile or probable cause for a warrantless search. This point has no merit.

■ The law is well-settled that a police officer may under appropriate circumstances, stop a person to investigate possible criminal behavior even though there is no probable cause to make an arrest. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See State v. Stark*, 502 S.W.2d 261 (Mo.1973).

■ The facts here entitled the officer reasonably to suspect the defendant's activities as being criminal and to detain him briefly. This conclusion is reached as a result of the officers' experience, coupled with their knowledge of numerous automobile thefts from the apartment complex and their observation of the defendant's vehicle being driven during early morning hours in a suspicious manner. The stop of the defendant's vehicle and request for identification was therefore legal.

The subsequent discovery of the tools in the attache case and briefcase in the trunk, however, was the result of an unlawful search.

"The scope of a warrantless search of an automobile ... is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982). *See State v. Jackson*, 646 S.W.2d 367, 369 (Mo.App.1982).

■ Thus, if the vehicle has been lawfully stopped and there is probable cause to believe there is particular contraband or evidence in the car, there is justification to search every part of the vehicle and its contents that may conceal the object of the search. *Ross, supra.* "[T]he probable cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers," that is, it must be based on facts within knowledge of the officer. *Id.* 102 S.Ct. at 2164. Under the Fourth Amendment, a warrant shall not issue except "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.

■ Applying the *Ross* principles to the present facts, it is clear that the police officers did not have sufficient probable cause to conduct a warrantless search of the containers within the trunk. Although there was probable cause to arrest the defendant (i.e., the outstanding warrants) the officers additionally needed a basis for believing that particular evidence of a crime or specific contraband was being concealed within the trunk before conducting a warrantless search.

This court must then determine whether, despite the unlawful search and seizure, the evidence may be admitted under the inevitable discovery doctrine.

"If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... the evidence should be received." *Nix v. Williams*, —— U.S. ——, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). *See United States v. Apker*, 705 F.2d 293, 306–07 (8th Cir.1983); *United States v. Glenn*, 577 F.Supp. 930, 933 (W.D.Mo.1984).

■ In the present case, the automobile was impounded subsequent to the arrest of the three occupants, including Angela Gray, the owner.[1] Assuming, for the sake

---

1. An impoundment is justified "only if the vehicle is associated with the commission of an offense or the arrest of defendant or if the location or condition of the vehicle is such that the safety or interest of the public requires its removal and police intervention is the only viable option." *State v. Williams*, 654 S.W.2d 238, 241 (Mo.App.1983). There is a question of whether an impoundment is proper if the police knew that the individual would be detained for only a short period of time, *see United States v. Wilson*, 636 F.2d 1161, 1166 (8th Cir.1980) ("search unnecessary because the police intended to retain control of Wilson's vehicle for only a short period of time...."); *Williams, supra,* at

of argument, that the owner's arrest was lawful, the impoundment was valid since the car would have been left unoccupied on the entrance ramp at Highway 270 and Lilac, thus placing the public's safety in question.

■ The next issue, therefore, is whether an inventory search which included the containers in the trunk would have been valid and inevitably would have revealed the evidence. Although the Eighth Circuit is more restrictive with regard to the validity of inventory searches, *see United States v. Wilson*, 636 F.2d 1161, 1164–65 (8th Cir. 1980); *Glenn, supra* at 933, the inventory search of the vehicle at issue is upheld as proper. The evidence would have been inevitably discovered if it had not been removed during the roadside search.

■ Essentially there are three justifications for an inventory search of a vehicle following police impoundment: "(1) the protection of the vehicle owner's property, (2) the protection of the police from claims of lost property, and (3) the protection of the police from potential danger." *State v. Williams*, 654 S.W.2d 238, 241 (Mo.App. 1983) (citations omitted). Whatever the justification, the inventory search must be reasonable in scope under the Fourth Amendment. *Id.*

■ The facts of this case compel a finding of justification for the inventory search both to protect the vehicle owner's property and to protect the police from lost property claims. The trunk lock was punched out, thereby exposing the containers within. The police could not inventory the trunk as a single unit as in *Wilson, supra* at 1164, because there was no trunk lock to offer the protection which would be afforded by an inventory search. It was necessary to remove the containers from the trunk to protect their contents.

■ The next issue is whether the police should have inventoried the briefcase and pouch as units, without opening them to reveal the contents. This court holds that a unit inventory was not required to make the search valid.

"[I]t is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 2611, 77 L.Ed.2d 65 (1983). "Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit." *Id.* 103 S.Ct. at 2610.

Although the United States Supreme Court applied this rationale to the inventory search of a shoulder bag carried by the arrested individual, the rationale can be extended to containers within an unlocked trunk of a vehicle. 2 W. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 7.4, at 223 (Supp.1984).

The evidence may be admitted under the inevitable discovery exception because the impoundment of the vehicle, the inventory search of the unlocked trunk, and the opening of the containers were all valid police actions.

The evidence seized from the defendant's wallet during the booking process was also admissible. *Illinois v. Lafayette, supra.*

The defendant contends in his second point that the trial court erred in admitting evidence that Mr. Garbo's car was stolen subsequent to the alleged tampering by the defendant. Defendant based his objection on grounds of relevancy and remoteness. This point is also without merit.

243 ("nature of the charge for which appellant was arrested would indicate that she might be in custody but a short time ... and the state did not show any reason why the car would not have been returned to her following her release

from custody."), however, under the present facts there is an overriding concern regarding the location of the stop: the entrance ramp to a highway.

Relevancy is established if the evidence logically tends to prove or disprove a fact in issue or to corroborate evidence which itself is relevant and bears on the principle issue. *State v. Sanders*, 619 S.W.2d 344, 348 (Mo.App.1981). In a criminal proceeding, questions of relevancy rest within the sound discretion of the trial judge and rulings will be disturbed only if an abuse of discretion is demonstrated. *Id.*

The admission of the evidence of the subsequent theft of the automobile, when combined with the evidence of the tools and list found on defendant, cannot be said to constitute an abuse of discretion. The evidence was relevant in that it corroborated the other evidence linking the defendant to the alleged tampering.

Defendant raises one other matter which requires attention. In the defendant's third point he charges trial court error in failing to instruct the jury on the lesser included offense of tampering in the second degree. This contention is without merit.

A trial court has an obligation to instruct the jury on all lesser included offenses supported by the evidence. *State v. Owens*, 598 S.W.2d 174, 175 (Mo.App.1980). The offenses, however, must meet a statutory elements test, that is "[i]f the greater of two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater." *State v. Amsden*, 299 S.W.2d 498, 504 (Mo.1957); *State v. St. Clair*, 643 S.W.2d 605, 610 (Mo.App.1982). The present offenses fail this test.

Section 569.090, RSMo.1978 provides:

"1. A person commits the crime of tampering in the second degree if he:

(1) Tampers with property of another for the purpose of causing substantial inconvenience to that person or to another; or

(2) Unlawfully operates or rides in or upon another's automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle; ..."

In order to justify a conviction for stealing under § 570.030, RSMo.1978 (as amended 1981), it is essential that

1. [H]e appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion.

Attempted stealing requires the mental state of having a purpose to deprive. § 564.011 RSMo.1978. Application of the statutory element test compels the conclusion that tampering in the second degree is not a lesser included offense of attempted stealing of a motor vehicle. The mental state of having the purpose of causing substantial inconvenience is not included in the stealing statute which requires a different mental state, one having the purpose of depriving the owner of his property. Thus, the point is denied.

The judgment is affirmed.

STEWART and SATZ, JJ., concur.