**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Heidi BURKHARDT,
Defendant–Appellant.**

**No. 72256.**

Supreme Court of Missouri,
En Banc.

Sept. 11, 1990.

John Sims, Neosho, William Taylor, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Robert V. Franson, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

RENDLEN, Judge.

Defendant was convicted of possessing more than 35 grams of marihuana and punishment assessed at four years' imprisonment. Her cache of contraband measured some 57,753 grams (127 pounds) exceeding by 57,718 grams the established limit of 35 grams [1] necessary to assess punishment of five years in the state penitentiary. The single issue on appeal involves the trial court's refusal to suppress as evidence the marihuana found in her car when stopped by state troopers following a traffic violation. A divided court of appeals held the trial court erred in not suppressing such evidence, concluding the marihuana had been seized in a unlawful search and ordered defendant discharged. We accepted transfer and now affirm the trial court's ruling.

---

**1.** Under § 195.020.1, RSMo 1986, thirty five grams is the statutory limit beyond which even first offenders may be incarcerated in a state correctional institution.

On February 28, 1988, State Highway Patrol Troopers Timothy Rousset and Daniel Banasik were in a patrol car near the intersection of Missouri 43 and Interstate 44 in Newton County near the city limits of Joplin. The troopers were working west and east bound traffic along Interstate 44 in a region where the posted speed limit was 55 miles per hour. At approximately 10:30 that night, they spotted a 1988 Chrysler Fifth Avenue speeding eastbound on Interstate 44 at 64 miles per hour and as the automobile passed, Rousset noted that defendant, accompanied by a passenger, was driving.

Turning on their siren and lights, the troopers gave chase and about one and one-half miles further defendant pulled to the shoulder of the road followed by the patrol car. The troopers approached the automobile, Rousset on the driver's side, Banasik the other, and Rousset informed defendant she had been speeding. On request, defendant presented her driver's license, showing her as a California resident. The passenger, Beth Merrifield, produced her driver's license, indicating her residence as North Carolina.

Because of the din from passing traffic, Rousset asked defendant to accompany him to the patrol car that he might obtain the information for preparation of a traffic ticket. Banasik accompanied them leaving Merrifield in defendant's car. While in the patrol car, defendant stated the automobile was a rental she had picked up in California and showed them the rental agreement papers which appeared to be in order. The patrolman "thought it was unusual that one of them was from the West Coast and one of them from the East Coast." Further, the distances involved prompted the officers to ask why defendant rented a vehicle to travel from California to Ohio instead of flying. Defendant had no reply to this inquiry. Rousset then asked defendant the purpose of her trip and her rela-

tionship to Merrifield and, as noted above, explaining in his testimony that he found it somewhat unusual that defendant was from the West Coast and Merrifield from the East. He asked defendant how long she had known Merrifield to which defendant replied (1) "she had known her a long time", (2) that she had attended college with Merrifield's sister, and (3) had met her through the sister. Further, that (4) she worked as an artist and (5) Merrifield worked at a place near defendant's home in California. Defendant also related that they were traveling to Akron, Ohio to see defendant's sister. During this questioning, observing that defendant was "visibly nervous," "fidgety" and "yawning," and noting the yawns appeared to be forced, Rousset became suspicious that all was not as it appeared. He then left defendant in the patrol car and went to the other car where he asked the same questions of Merrifield and was given quite a different story. Merrifield stated (1) she had not known defendant long, (2) she made no mention of her sister with whom defendant had attended college, (3) she did not recall how they had met, and (4) was not currently employed, but (5) was looking for a job. Rousset returned to the patrol car where defendant and Trooper Banasik were waiting and confronted defendant with the conflicting story of Merrifield. Defendant, immediately became more nervous, began again to yawn, pointing to a nearby Holiday Inn saying she was tired and just wanted to leave and go to sleep. When faced with this second round of questioning and advised that their tales failed to jibe in many important aspects, defendant's nervousness heightened appreciably, she "squirmed" in her seat, began "wringing" her hands and her voice developed a "tremor."

At this point Banasik left the patrol car and approached the rented Chrysler. During a cursory check for weapons, he no-

ticed two pieces of luggage, an overnight bag and a suitcase in the back seat of the automobile. Banasik asked Merrifield whose luggage it was and she replied "ours" and indicated that one of the pieces belonged to defendant.

In the patrol car, Rousset, recognizing defendant's visibly increasing nervousness, asked appellant if there was something in the car which made her nervous, to which she replied "no," so he asked if she would mind if he looked in the car for something that might be making her nervous. He then asked defendant if she would consent to a search of her automobile and her response was an inquiry: she wanted to know if she must allow the troopers to search her car. The trooper informed her that she did not and she stated she did not mind if they searched the *automobile* as long as they did not look in the *luggage.* Rousset then informed her that he would have to inspect the luggage because "it would be easy to conceal something, for instance drugs, in the luggage, and that we would not know whether the car contained drugs or not unless we looked in the luggage." Defendant said the luggage should not be searched because she did not want her lingerie "stretched up and down the side of the highway." The trooper assured her he had no intention of "stretching her lingerie up and down the highway and that if there was *contraband* in the car, that if she would tell us where *it was,* then there would be no need to go through her luggage." (Emphasis added.) Defendant responded that she "didn't know if she should tell" him and asked if he was going to search the car and its contents anyway. Trooper Rousset responded he "felt that we had probable cause based on her nervousness, and the fact that their stories didn't coincide." To this defendant responded, "You might as well go ahead and search it yourself. I'm not going to tell you where *it's at.*" (Emphasis added.)

At this point, Trooper Rousset left defendant in the patrol car and went to the Chrysler where Merrifield had remained and asked her permission to search the car. Merrifield replied she did not feel the troopers had a right to make the search. Rousset told her he believed he had the right given the differences in their stories and when Merrifield refused to give permission, the trooper told her to go to the patrol car and wait.

Only then did Rousset commence to search the automobile. He reached into the back seat and picked up the overnight bag and returned to the patrol car, asking the women to whom it belonged. Defendant told him it was hers. Rousset then opened the bag and found a small plastic package containing a small quantity of marihuana.[2] Thereupon, he informed the women they were under arrest for possession of marihuana.

After the arrest, Rousset returned to the Chrysler and removed the large suitcase from the back seat. Opening it he discovered several large bags of marihuana and, on opening the trunk, found two large pieces of luggage, each containing sixteen plastic bags of marihuana, totaling in all 57,753.6 grams or approximately 127 pounds.

The officers called for a tow truck and defendant's car was taken to the police station where defendant waived her right to an attorney and informed the police she had only recently met Merrifield. Some friends of Merrifield had convinced her, as well as Merrifield, to drive from Laguna Beach to Akron to deliver a quantity of marihuana for which defendant would receive $1,000, and because she was having financial difficulties relating to delinquent income taxes, she agreed to the plan.

Prior to trial, defendant's counsel moved to suppress the marihuana and all of defendant's post arrest statements. At the suppression hearing, only the two troopers and the officer who recorded defendant's statements testified. The trial court denied the motions and at trial, both the marihuana

---

**2.** The marihuana in the plastic bag weighed 8.6 grams.

and defendant's post arrest statements were admitted in evidence. The jury found defendant guilty of possession of more than 35 grams of marihuana, § 195.020.1, RSMo 1986, and defendant was sentenced to four years' imprisonment. § 195.200.1(1)(b), RSMo Supp.1987.

The sole issue is defendant's contention that the marihuana taken from the car was inadmissible under the Fourth Amendment to the U.S. Constitution as the officers lacked probable cause to undertake the search.

■■■ The Fourth Amendment's prohibition against unreasonable searches and seizures is enforceable against the states through the due process clause of the Fourteenth Amendment. *State v. Witherspoon*, 460 S.W.2d 281, 284 (Mo.1970). Assertions that evidence intended for use at trial is the product of an unlawful search and seizure should be raised by motion to suppress, § 542.296, RSMo 1986; *State v. Stuart*, 415 S.W.2d 766, 767 (Mo.1967), to determine as a matter of law whether items alleged to have been unlawfully seized are inadmissible for that reason. *State v. Simone*, 416 S.W.2d 96, 100 (Mo. 1967). The proponent of such motion has the burden of establishing that his constitutional rights were violated by the challenged search or seizure, *State v. Lingar*, 726 S.W.2d 728, 735 (Mo. banc 1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987); however the burden is on the State to justify a warrantless search and to demonstrate that such falls within an exception to the warrant requirement, e.g. search of a stopped car on a highway. *State v. Epperson*, 571 S.W.2d 260, 263 (Mo. banc 1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979). A search of an automobile on the highways pursuant to probable cause to believe that contraband, weapons or evidence of a crime are within the automobile is a well established exception to the Fourth Amendment warrant requirement. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The automobile exception to

the warrant requirement stems from the fact an automobile's mobility often presents an exigent circumstance making procurement of a search warrant unfeasible, and especially because citizens have a less significant expectation of privacy in their automobiles than in their homes or offices. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Johnson*, 558 S.W.2d 424, 425 (Mo.App.1977). Such automobile search may be conducted on probable cause to believe that contraband is concealed within, a belief springing from circumstances that would justify issuance of a warrant. *U.S. v. Ross*, 456 U.S. 798, 809, 102 S.Ct. 2157, 2164, 72 L.Ed.2d 572, 584 (1982). Probable cause may arise when the facts and circumstances within the knowledge of the seizing officer are sufficient in themselves to produce in a man of reasonable caution a belief that the contents of the automobile offend the law. *State v. Hornbeck*, 492 S.W.2d 802, 805 (Mo.1973). The state alleges that Troopers Rousset and Banasik acted within this exception for they had probable cause to believe that contraband was concealed in defendant's automobile.

■■■ In our review of the trial court's denial of the motion to suppress, we look only to determine whether the evidence was sufficient to support the ruling. *State v. Baskerville*, 616 S.W.2d 839, 843 (Mo. 1981). It is not this Court's province to substitute its discretion for that of the trial court, but instead from the record before us which encompasses all the circumstances, the total atmosphere of the case, we must decide only whether there was adequate evidence to support the trial court's action. *State v. Novak*, 428 S.W.2d 585, 592 (Mo.1968). It is not required that the trooper be right in his belief the automobile contained contraband, only that such belief was reasonable. *U.S. v. Alden*, 576 F.2d 772, 775 (8th Cir.1978); *State v. Patterson*, 624 S.W.2d 11, 14 (Mo.1981). The weight of the evidence and the credibility of the witnesses is for the trial court's determination. *State v. Brown*, 762 S.W.2d 471, 474 (Mo.App.1988).

Here, the troopers observed defendant's car violating the posted speed limit, hence stopping the car for issuance of a traffic summons was clearly within their authority. § 304.010.2, RSMo Supp. 1989; *State v. Reynolds*, 753 S.W.2d 1, 2 (Mo.App.1988). While stopping the car for speeding did not alone provide probable cause, neither did it forever preclude a full search of the automobile. *State v. Achter*, 512 S.W.2d 894, 902–904 (Mo.App.1974). This because the right to search is not dependent upon the right to arrest but upon the probable cause the officer has for belief that the contents of the automobile offend the law. *State v. Hohensee*, 473 S.W.2d 379, 381 (Mo.1971). Yet in many instances a traffic violation is a circumstance to consider among the elements giving rise to probable cause justifying a search of the automobile. *State v. Achter*, at 902.

The fact that the speeding violation occurred on Interstate 44 is also an element to be considered. We take notice that the section of Interstate 44 is (as mentioned in dissenting opinion of the court of appeals) a notorious route used by drug traffickers bringing controlled substances into this state. A similar fact was deemed relevant in *Carroll v. U.S.*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), which first enunciated the automobile exception to the warrant requirement of the Fourth Amendment. There the Court noted the reputation of the Grand Rapids and Detroit areas for the smuggling of liquors into this country as a factor the police could consider relevant to the question of probable cause that a specific car carried illegal liquor. *Carroll*, 267 U.S. at 160, 45 S.Ct. at 287, 69 L.Ed. at 554.

To the trained observers, Rousset and Banasik, the late hour at when defendant and Merrifield were stopped for speeding could be considered among the accumulation of factors pointing to probable cause. *See* Annotation, *Search and Seizure: "Furtive" Movement or Gesture as Justifying Police Search*, 45 A.L.R.3d 581, 599 (1972); *State v. Ferguson*, 678 S.W.2d 873, 876 (Mo.App.1984).

The fact that defendant, driver of the car, was a California resident and that her passenger was from North Carolina were elements that the troopers could weigh, *State v. Pruitt*, 646 S.W.2d 369, 371 (Mo.App.1982) as well as the fact they were driving about 2,500 miles instead of flying that distance.

Defendant's visible nervousness, her fidgeting and yawning were important signs. These intensified and were accompanied by hand wringing, squirming and voice tremors when defendant was confronted with the glaring inconsistencies between her story and Merrifield's and these observations had heightened importance when coupled with other specific knowledge of surrounding circumstances. See *U.S. v. McGlynn*, 671 F.2d 1140, 1144 (8th Cir.1982). It has been well stated that:

innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizen's demands ... In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of non-criminal acts.

*Illinois v. Gates*, 462 U.S. 213, 243 footnote 13, 103 S.Ct. 2317, 2335 footnote 13, 76 L.Ed.2d 527, 552 footnote 13 (1983). Defendant's suspicious conduct and movements were properly considered by the trooper when reaching the level of probable cause for a warrantless search of the automobile. *State v. Whitnah*, 493 S.W.2d 32, 35 (Mo.App.1973).

This Court, as did the trial court, views the circumstances in their totality as they unfolded that night on Highway 44. The troopers need not have been confronted with a prima facie showing of criminal activity by defendant, but rather they need only have concluded that a probability of criminal activity existed and from this have an acceptable basis for probable cause, *State v. Pennington*, 642 S.W.2d 646, 648 (Mo.1983), to believe the automobile was carrying contraband.

It was argued here a warrantless search of an automobile must rest on facts providing probable cause which would justify issuance of a search warrant, *State v. Donohoe*, 770 S.W.2d 252, 255 (Mo.App. 1989), and for a warrant to issue the items to be seized must be described with sufficient particularity to render the search lawful. *State v. Pennington*, at 648. Though defendant contends Trooper Rousset was required to have probable cause to believe that *marihuana* was concealed in the car, probable cause to search an automobile arises when an officer stops a car and suspects it contains any contraband, weapons or evidence of a crime. *State v. Berkwit*, 689 S.W.2d 763, 767 (Mo.App.1985). Before he commenced, Rousset stated that a search of the luggage was needed because "it would be easy to conceal something, for instance, drugs, in the luggage." By vocalizing his concern of the probability that drugs were in defendant's car satisfied the specificity requirement.

The consensual search of the car itself was proper though defendant's consent was restricted by her statement that the luggage not be searched. *State v. Smith*, 357 Mo. 467, 209 S.W.2d 138, 140 (1948).

Concerning the luggage, any doubt as to the presence of probable cause was dispelled by defendant's final statements preceding the search. Mindful that the officer had previously told her "It would be easy to conceal something, for instance, drugs, in the luggage, and that we would not know whether the car contained drugs or not unless we looked in the luggage" (emphasis added), this testimony followed:

Q: She [Appellant] give any reason why she did not want her luggage looked into?

A: [Trooper Rousset] Yes, she made a statement about she really didn't care for the idea of having her lingerie stretched up and down the side of the highway.

Q: And did you make any comment in response to that?

A: Yes, I did. I said that we had no intention of stretching her lingerie up and down the highway, and that if there was *contraband* in the car, that if she would tell us where it was, then there would be no need to go through her luggage

(emphasis added).

Q: Did she give any immediate response to that?

A: She paused and then stated that she didn't know if she should tell us or not.

Q: She make any other statement at that time?

A: She did. She asked if we were going to go ahead and search the car anyway, to which I responded that I felt that we had probable cause based on her nervousness, and the fact that their stories didn't coincide, and that we were going to search the car.

Q: After you informed her of that, did she make any statement?

A: When confronted with the fact that we were going to search the car anyway, she said, "You might as well go ahead and search it yourself. I'm not going to tell you where *it's* at." (Emphasis added.)

It is obvious from this exchange, that prior to Rousset's search for contraband, he had probable cause to believe that drugs were in the automobile, specifically in the luggage, which caused defendant's sharp anxiety. Defendant's statement that, "I'm not going to tell you where *it's* at," could only refer to the contraband itself. The argument advanced by defendant's counsel that she was referring to her lingerie borders the absurd. Trooper Rousset made it clear to defendant that he was searching for contraband and it was that, not lingerie, which produced her nervous reaction and her several fabrications.

A question has been posed regarding consideration of defendant's final critical remark immediately before the search was undertaken. In this connection it must be emphasized that defendant's blurt out that "I'm not going to tell you where *it's*

at" is not challenged under either Fifth or Sixth Amendment doctrine. The statement goes only to the issue of probable cause to reasonably search under the Fourth Amendment and is properly to be considered as a part of the "totality of the circumstances." To determine whether the statement was a pertinent circumstance, its temporal relationship to the search becomes important. The search of the defendant's vehicle and more specifically her luggage commenced immediately *after* this final damaging statement was made. Under all the circumstances, together with the rational inferences, the trial court, in effect, found that at the moment of search a man of reasonable caution would be warranted in believing the action taken was appropriate, *U.S. v. Nicholas,* 448 F.2d 622 (8th Cir.1971). The search had not begun when Banasik earlier had looked in the car at that which could be readily seen, *State v. Harre,* 280 S.W.2d 41 (Mo.1955), *cert. denied,* 353 U.S. 915, 77 S.Ct. 675, 1 L.Ed.2d 669 (1957). Such examination by flashlight from without the car is permissible, *U.S. v. Wickizer,* 465 F.2d 1154 (8th Cir.1972), and such looking into an automobile at objects open to public view is not a search within the purview of the Fourth Amendment, *State v. Hawkins,* 362 Mo. 152, 240 S.W.2d 688, 692 (1951). A search within the constitutional provisions invoked involves a *quest* for, a *looking* for or a *seeking* out of that which offends the law. "It implies *prying* into *hidden* places for that which is concealed." *Id.* 240 S.W.2d at 692. Nothing of that sort occurred until after defendant's final blurt out while sitting in the patrol car with the officers. Rousset then left the patrol car and went to the Chrysler where Merrifield sat waiting.

The presence of probable cause to believe that contraband was concealed somewhere within defendant's automobile permitted an immediate search without the necessity of presenting the issue to a magistrate. *State v. Morgan,* 592 S.W.2d 796, 805 (Mo.banc 1980), *vacated,* 449 U.S. 809, 101 S.Ct. 56, 66 L.Ed.2d 12 (1980), *orig. op. aff'd,* 612 S.W.2d 1 (Mo. banc 1981). Hav-

ing arrested defendant and Merrifield, the trooper was allowed to continue the immediate search without the necessity of a warrant. *State v. Hornbeck,* at 807. When the search began, its scope was not limited to the containers in which the marihuana was concealed but instead extended to places in which the object of the search might be found, *U.S. v. Ross,* 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572, 593 (1982); *State v. Jackson,* 646 S.W.2d 367, 369 (Mo.App.1982), including the luggage in the passenger compartment as well as the trunk.

The record before us clearly contains substantial evidence supporting the trial court's ruling. In this court "tried" issue, the ruling of the trial court must be sustained by the appellate court unless there is no substantial evidence to support it. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). The record here adequately supports the trial court's determination that the 127 pounds of marihuana seized in the search of defendant's automobile was admissible in evidence.

Judgment is affirmed.

BLACKMAR, C.J., and HIGGINS, COVINGTON and BILLINGS, JJ., concur.

ROBERTSON, J., concurs in result.

E. RICHARD WEBBER, Special Judge, dissents in separate opinion filed.

HOLSTEIN, J., not sitting.

E. RICHARD WEBBER, Special Judge, dissenting.

I respectfully dissent.

The Fourth Amendment of the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.

543 (1925), recognized the lawful search of an automobile without a warrant, but not without probable cause. Mobility of automobiles was cited as the justification for adoption of this judicial exception. *Chambers v. Maroney*, 399 U.S. 42, 48, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419, 426–427 (1970). The judgment of an officer by judicial construction is permitted to be substituted for the adjudication by a disinterested judge that probable cause exists and that a search should be conducted.

Warrantless searches of automobiles are recognized under many other recognized exceptions, not relevant here. *State v. Achter*, 512 S.W.2d 894, 899–905 (Mo.App. 1974). The lawfulness of this search must rest upon an ultimate conclusion that officers who stopped defendant for speeding had probable cause to believe the car contained evidence or contraband they were entitled to seize.

Probable cause means more than mere suspicion by the searching officer. *State v. Hornbeck*, 492 S.W.2d 802, 805 (Mo. 1973); *State v. Morgan*, 592 S.W.2d 796, 804 (Mo. banc 1980); *State v. Patterson*, 624 S.W.2d 11, 14 (Mo.1981); *State v. Johnson*, 558 S.W.2d 424, 426 (Mo.App.1977); *State v. Shigemura*, 768 S.W.2d 620, 623 (Mo.App.1989). When defendant was stopped for speeding, officers had no information that the vehicle was offending the law in any way, except it measured a speed of 64 M.P.H. on the radar scope. The cases that forged the "automobile exception", which authorizes officers' warrantless searches of vehicles upon police determination of probable cause, clearly demonstrate that before officers conduct lawful warrantless searches of automobiles, they must show by objective facts what they expected to seize. In *Carroll v. United States*, defendant was a known bootlegger; previously he had outrun the police in the same car in an area that was near the international boundary and known as one of the most active centers in the United States for the introduction of illegal liquor into commerce, and defendant and a companion using the same car earlier attempted to furnish whiskey to officers. When defendant Carroll was stopped, the officers were looking for illegal liquor, and obviously had probable cause to believe they would find the expected contraband. Likewise, in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), an informant told a detective that "Bandit," later discovered to be an alias of defendant, was selling narcotics from the trunk of his car at a known address; that he observed such a sale and "Bandit" informed him more drugs were in the trunk. The car was matched to defendant whose car was stopped and searched. The searching officer was looking for and found narcotics. In fact, in all of the Missouri cases involving the warrantless search of automobiles cited in the majority opinion where challenged searches were upheld, the officers conducting the searches, based upon objective articulable facts known to them, knew what they were intending to seize before the search began. It is the "fishing expedition," the "hunch or suspicion", or, as in *State v. Witherspoon*, 460 S.W.2d 281, 287 (Mo.1970), the "exploratory search" that offends the Fourth Amendment.

In that case, Defendant Witherspoon was stopped after being reported as a suspect for speeding and reckless driving. A license check revealed information concerning questionable automobile registration, which resulted in the arrest of defendant on the scene for use of an improper license plate. The officer asked defendant, "If there would be anything in the trunk they would care if I looked at?" *Id.* at 282. He "replied negatively" and gave the officer the keys. The officer's search of the trunk produced burglar tools used against defendant over objection at his trial. "The patrolman disclosed no known reason to believe, and did not express the belief at the hearing, that the trunk contained any contraband or evidence which could be used in the prosecution of a felony he had probable cause to believe had been or was being committed...." *Id.* at 283. The Court observed, "Likewise, in the instant case the facts can only justify the conclusion that the officer embarked on an exploratory search, without any justification shown in the record that he had reasonable or proba-

ble cause. Lacking that vital element, the Motions to Suppress should have been sustained...." *Id.* at 287.

Subjective beliefs by police officers that something is wrong with a defendant's behavior will not withstand a challenge of Fourth Amendment violation of unlawful search and seizure. "... Here, the State argues that the troopers had a 'hunch' or 'suspicion' that Hensley and Weber were drug dealers, and therefore, a search of their persons was justified. Hunches and suspicions, even if acted on in good faith by the officers involved, are not enough. If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be secure in their persons, houses, papers and effects only in the discretion of the police. *Beck v. Ohio,* 379 U.S. 89, 97, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964)." *State v. Hensley,* 770 S.W.2d 730, 734 (Mo.App.1989). Officers are required to point to objective articulable facts that cause them to seek *specific* contraband, to avoid the harm Judge Taft recognized in *Carroll,* "But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise." 267 U.S. at 154, 45 S.Ct. at 285.

Where evidence was ruled admissible in another case under the "inevitable discovery" doctrine but inadmissible for lacking probable cause, the court declared, "It is clear that the police officers did not have sufficient probable cause to conduct a warrantless search of the containers within the trunk. Although there was probable cause to arrest the defendant (i.e., the outstanding warrants) the officers additionally needed a basis for believing that *particular* evidence of a crime or *specific* contraband was being concealed within the trunk before conducting a warrantless search." (emphasis supplied) *State v. Ferguson,* 678 S.W.2d 873, 876 (Mo.App.1984). In that case, a witness observed a man later identified as defendant near a Camaro who fled at 5:30 a.m. after seeing the witness. The

car had damage in the nature of that caused by forced entry. Many cars had been stolen in the community. A vehicle drove in and parked by a sports car in the early morning hours and, later, pulled into the parking lot of a nearby apartment complex. The Defendant was in the car. The officers learned that there were outstanding warrants for his arrest. The officers were looking for and found burglary tools in the trunk.

The totality of circumstances in this case lead to the inescapable conclusion that the officers who stopped defendant for speeding were committed to search this out of state car for something. The identity of what they sought is not suggested by any facts known to them before Officer Rousset made the decision to search the car. He had no idea what he was after, only that he was determined to look for something. According to his testimony, the probable cause determination was based upon the following two pieces of information:

Q. She make any other statement at that time?

A. She did. She asked if we were going to go ahead and search the car anyway, to which I responded that I felt that we had probable cause based on her nervousness, and the fact that their stories didn't coincide, and that we were going to search the car.

These are the facts relied upon by the officer in determining whether probable cause existed to lawfully authorize a search of defendant's car. These facts come from the officer's mouth. A cocaine possession conviction was reversed where defendant was "extremely nervous" just before a warrantless search by a trooper was conducted after he was stopped for speeding. The officer asked defendant, "Is there anything in the car I should know about" and invited himself to "look in the car." The defendant demurred to no avail. The trooper seized evidence, which the trial court did not suppress. "In fact, it was clear that the officer did not know what he was looking for. He found no weapon, and

turned his search to drugs: 'at the time I didn't know exactly what I was wanting to search for. I knew something was wrong. I felt like there was possibly a contraband ... Although, I admit, had I found drugs, that would have been contraband, which is what I was looking for ...' The only articulable fact shown by the officer as an objective basis for his suspicion and search was Donohoe's extreme nervousness. That solitary circumstance simply does not suffice for the intrusion into a motor vehicle for a search, either for weapons or drugs...." *State v. Donohoe,* 770 S.W.2d 252, 258 (Mo.App.1989).

Defendant and a companion were interrogated separately after the speeding stop, a practice consistent with a conclusion that the officers intended to search the out of state car from the moment of the stop. The registration was in order; no radio communications indicated any criminal activity by the occupants or that either had a criminal record; the occupants were from all accounts courteous and neither made any unusual statements or requests. Their accounts of historical data were in some respects inconsistent. Another search of an automobile without a warrant was ruled violative of Fourth Amendment rights where an officer searched a trunk, "... because conflicting stories of the defendants made him suspicious...." *State v. Witherspoon,* 460 S.W.2d at 283.

There are good reasons for these rulings, which require more than nervousness of a defendant or conflicting stories of a defendant and another vehicle occupant. In some quarters, abuse by over zealous officers could easily occur. The slightest body movement could be interpreted as an act of nervousness by a driver. The slightest discrepancy in accounts of activities by a driver and an occupant, perhaps made in jest, could be used for unlawful intrusive purposes.

The majority opinion concludes that the following statements of defendant may be included by the officers as additional facts upon which a probable cause finding might be supported. She said, after the officer announced he was going to search, "You might as well go ahead and search it yourself. I'm not going to tell you where it's at." Defendant made it very clear that she did not want her luggage searched. In *State v. Young,* 425 S.W.2d 177, 181 (Mo. 1968), a warrantless search of an automobile was reversed. The officer wanted to look in the trunk. The defendant took his keys and opened the trunk after he told the officer he did not want to open it and he "didn't like people looking through my private stuff", to which the officer explained, "We are going to be looking at them now whether you like it or not." "Under the circumstances, defendant was doing no more than submitting to the will of the police in what must have been a firm determination on the part of the authorities to look in the trunk." *Id.* at 181. Defendant, in withholding further cooperation was submitting to lawful authority. For that she may not be criticized.

Defendant's Fourth Amendment right to be secure against an unlawful search was violated. *United States v. Ross* requires a probable cause determination based on objective facts that could justify issuance of a warrant by a magistrate. "Only the prior approval of the Magistrate is waived; the search otherwise is as the Magistrate could authorize." *Id* at 823, 102 S.Ct. at 2172. Officers here could not have described "things to be seized" to a disinterested judge. All other cases reporting valid searches previously decided recite facts that officers knew and could articulate to point to specific things to be seized. The departure permits that which was heretofore offensive, "... for 'Thus the Government is obliged to justify the arrest by the search and at the same time to justify the search by the arrest. This will not do ... Any other rule would undermine "the right of the people to be secure in their persons, houses, papers and effects", and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law.' *Johnson v. United States,* 333 U.S. 10, 16–17, 68 S.Ct. 367, 370, 92 L.Ed. 436 (1948)." *State v. Witherspoon,* 460 S.W.2d at 287.

I would affirm the Court of Appeals, Southern District, and reverse the conviction and discharge the defendant.