**STATE of Missouri, Plaintiff/Respondent,**

v.

**Kareem OZIER, Defendant/Appellant.**

No. 69988.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 6, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 4, 1998.

Susan K. Eckles, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel G. Cierpiot, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Defendant appeals from the judgment entered after a jury verdict of murder in the first degree. Defendant was sentenced to life imprisonment without parole in accordance with the jury's recommendation. We affirm.

We view the evidence in the light most favorable to the verdict. *State v. Richardson*, 923 S.W.2d 301, 307 (Mo. banc 1996).

On the evening of August 9, 1993, hostile words were exchanged between two groups of young men on a street in St. Louis. According to some witnesses, there was also a physical altercation between one man from each group. After the incident, one group went to Michelle Wood's house on Harney Street. Antijuan Bohlen, who was in the other group, called defendant after the incident and told him that he and some friends were involved in an altercation. Defendant agreed to help Bohlen get some guns. John Robinson, Kareem Brookins and Bohlen then drove to defendant's house in Robinson's car. Defendant and the group then went to the home of Hasan Allison, a neighbor of defendant, and retrieved guns including a SKS assault rifle and MAK 90 assault rifle. The weapons were put in Robinson's car, and defendant and the others began searching for the persons in the other group that were involved in the altercation.

As defendant's group drove down Harney Street, they saw several individuals standing outside Michelle Wood's house. Sixteen people including three babies were standing around or near Wood's house. Defendant's group drove by the house, and Brookins identified some of the persons standing near the house as being from the other group involved in the altercation. Defendant's group drove by Wood's house a second time but did not stop because another car pulled behind them. At some point defendant moved from the back seat to the front seat of the two-door car. When the group passed by Wood's house a third time, defendant fired all the ammunition in the SKS assault rifle. Thirteen year-old Tequilla Woods was shot three times and died at the scene. Seven other persons including the baby that Tequilla Woods was holding were also shot.

After the shooting, defendant went to a friend's house. This friend drove defendant and Hasan Allison to Allison's house. After arriving at Allison's house, defendant and Allison "put the guns back." Defendant then went home. Based on certain statements, the police went to defendant's house. Defendant told police they could find the guns across the street at Hasan Allison's house. Defendant gave audio and video-taped statements, admitting that he was the only shooter in the car.

Defendant was charged with one count of murder in the first degree, seven counts of assault in the first degree and eight counts of armed criminal action. The counts were severed and trial commenced on the murder count. Defendant testified that he obtained the guns, he was the only shooter and he fired eight or nine shots. He also testified that he aimed the gun "down" and that he never intended to shoot Tequilla Woods or anyone. The jury found defendant guilty of murder in the first degree. Defendant was sentenced in accordance with the jury's recommendation to life imprisonment without parole. This appeal followed.

Defendant argues in his first point that certain statements by the prosecutor during closing argument require reversal. The following is a portion of the closing argument:

[PROSECUTOR]: . . .

And it doesn't matter if [defendant] never shot her. He didn't have to shoot the gun. Technically he didn't have to be there because if he aided and encouraged and knew what was going to happen in regard to those people over there, by reason of him giving these guns, he could be found guilty of murder first under that circumstance without being there.

It may cause you some problems. It certainly didn't cause him any problems. That his victims were faceless, that his victims were genderless, that his victims were ageless.

They were just things. They were just people in front of him. He really didn't care. You know it's like, well, he didn't know Tequilla Woods to be mad at her or to do something with her, therefore he couldn't have possibly intended to kill her. He couldn't have possibly deliberated about killing her.

Well, step back and use your common experience. You're all familiar with the World Trade Center bombing and you're all—

[DEFENSE COUNSEL]: Objection, Your Honor. I object to the use of that analogy. That is prejudicial. It is irrelevant to the proceedings here. I move for a mistrial, Your Honor. That comparison is too gross and prejudicial to even use in this case.

THE COURT: Objection sustained but the motion denied.

[DEFENSE COUNSEL]: Ask the jury to be instructed to disregard that comment.

[PROSECUTOR]: Can we approach?

The prosecutor and defense counsel continued to argue this issue outside the hearing of the jury. The trial court again sustained the defense objection to the prosecutor's reference to the World Trade Center bombing and denied the defense's renewed request for a mistrial. The prosecutor continued his closing argument. Defense counsel gave her closing argument and the prosecutor then began the rebuttal portion of his argument.

. . . .

[PROSECUTOR]: I want to point out to you [defense counsel] said do the right thing. I want to read to you a little poem that Julie and Robin Kerry[sic] wrote before they were killed. "Do the [R]ight [T]hing."

[DEFENSE COUNSEL]: Your Honor, I am going to object.

THE COURT: Just a moment.

[DEFENSE COUNSEL]: I am going to object to the reference to a poem by somebody else that was killed. It is not relevant here. It is prejudicial for him to make that comment.

THE COURT: It's closing argument. Overruled.

[PROSECUTOR]: "Do the Right Thing." It was entitled on the Chain of Rocks Bridge.

[DEFENSE COUNSEL]: Your Honor, may we approach the bench?

[PROSECUTOR]: "We have"—

[DEFENSE COUNSEL]: May we approach the bench? This is not right, Your Honor.

(The following proceedings were had at the bench out of the hearing of the jury:)

[DEFENSE COUNSEL]: Your Honor, counsel has informed this jury of another case in St. Louis City. It is the Chain of Rocks case where two young white girls were supposedly tossed off a bridge or raped or something of that nature.

[The Prosecutor] has made reference to this case now. It is the third incident of a well-known case that he has now mentioned. He mentioned the fact that the writer of this poem was one of the dead girls in that murder.

Your honor, this is totally improper. It is prejudicial. It is inflammatory. I move for a mistrial. I don't think that—I think the cumulative affect of these three things that he has now brought into this jury is such that it has inflamed and prejudiced the jury in this case. That argument is improper and it is inflammatory.

He had no business telling this jury about the Chain of Rocks case or about any dead girls writing a poem. He has overstepped the bounds of closing argument. I move for a mistrial.

[PROSECUTOR]: I can appeal to the conscience[sic] of this community and I have not likened him to the killer of those ladies. I am entitled to motivate them and move them by whatever means that is appropriate that is not prejudicial on its surface or even slightly. I'm entitled to make a final argument. I am entitled to appeal to the conscience of the community.

THE COURT: Do you intend to get into the facts of the case?

[PROSECUTOR]: No. I am going to read the poem.

THE COURT: I am going to allow [you to] read the poem. No more reference to the facts of the case.

[PROSECUTOR]: I didn't, I said she's dead and I said this is a poem from the Chain of Rocks Bridge.

[DEFENSE COUNSEL]: You mentioned a dead girl. You said that, yes, you did.

[PROSECUTOR]: That's what I said—

THE COURT: I said no more than that.

[DEFENSE COUNSEL]: My motion is overruled?

THE COURT: Yes.

(The following proceedings were had in the presence of the jury.)

[PROSECUTOR]: The poem, as I indicated, was entitled, "Do the Right Thing." "United as one, we've got to stop killing one another. You don't have to be black or white to feel prejudice. To fall in love, experience pain, create life, to kill or to die. You just have to be human."

A trial court's ruling regarding closing argument will not be overturned absent an abuse of discretion resulting in prejudice to the defendant. *State v. Simmons*, 944 S.W.2d 165, 178–79 (Mo. banc 1997). "An abuse of discretion exists only where the prosecutor's statements are plainly unwarranted and clearly injurious to the defendant." *Id.* Furthermore, a mistrial is a drastic remedy and should be granted only in extraordinary circumstances. *State v. Chambers*, 891 S.W.2d 93, 105 (Mo. banc 1994). Because the trial court observes the trial and the impact of any error, appellate review of a ruling on a motion for mistrial is for abuse of discretion. *Id.*

■ Defendant challenges the prosecutor's reference to the Chain of Rocks murders. *See State v. Clemons*, 946 S.W.2d 206, 213–15 (Mo. banc 1997) (discussing "Chain of Rocks Bridge" crimes). Defendant contends it was improper for the prosecutor to inform the jury that the Kerry sisters "had written the poem, had done so before they were killed, and that the poem was associated with the Chain of Rocks Bridge murders." Defendant asserts that mentioning the murders and the poem's origin was a calculated attempt by the prosecutor to inflame the jury

and sway their emotions towards a guilty verdict. Defendant admits that reading the poem itself "would have been fine."

■ There was no evidence that Julie Kerry, Robin Kerry or both wrote the poem, or that the poem was entitled on the Chain of Rocks Bridge. "A prosecutor may not argue facts outside the record." *State v. Storey*, 901 S.W.2d 886, 900 (Mo. banc 1995). Furthermore, it was irrelevant to any issue in the present case that the Kerry sisters were killed or that one or both wrote the poem read to the jury. A prosecutor should refrain from making irrelevant statements that only inflame a jury. *State v. Shurn*, 866 S.W.2d 447, 461 (Mo. banc 1993); *State v. Whitfield*, 837 S.W.2d 503, 513 (Mo. banc 1992). The prosecutor's statements were improper.

■ However, improper statements by a prosecutor do not always require reversal of a conviction. *State v. Banks*, 922 S.W.2d 32, 42 (Mo.App. S.D.1996); *State v. Roberts*, 838 S.W.2d 126, 131 (Mo.App. E.D.1992). An appellate court evaluates the facts of each case independently, and reverses a conviction only if the challenged comments had a decisive effect on a jury's verdict. *Banks*, 922 S.W.2d at 42; *Roberts*, 838 S.W.2d at 131–32. For a prosecutor's comments to have had a decisive effect, there must be a reasonable probability that, absent the comments, the verdict would have been different. *Banks*, 922 S.W.2d at 42; *Roberts*, 838 S.W.2d at 132.

■ Here, the prosecutor's comments were not decisive. Defendant testified that he obtained the guns, he was the only shooter and he fired eight or nine shots. Defendant's taped statements were also introduced into evidence. The prosecutor did not suggest that the crime defendant was being tried for was similar to the Chain of Rocks Bridge murders. There is not a reasonable probability that absent the prosecutor's comments the verdict would have been different. Accordingly, the comments do not require reversal of defendant's conviction.

■ Defendant also challenges the prosecutor's reference to the World Trade Center

bombing. The trial court sustained an objection by the defense but denied the motion for a mistrial.

As discussed, defendant testified he was the shooter. As soon as the prosecutor mentioned the World Trade Center, the trial court sustained an objection by the defense. Twenty-four witnesses testified for the State and the defense had three persons testify. The trial court is in a superior position to determine the impact of any error. Under the circumstances presented here, the court did not abuse its discretion by denying defendant's motion for a mistrial. Defendant's first point is denied.

No jurisprudential purpose would be served by addressing defendant's remaining points in a written opinion. These points are denied. Rule 30.25(b).

The judgment is affirmed.

AHRENS, P.J., and KAROHL, J., concur.