**STATE of Missouri, Respondent,**

v.

**Gregory W. WATSON, Appellant.**

No. 21818.

Missouri Court of Appeals,
Southern District,
Division Two.

May 6, 1998.

Amy M. Bartholow, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jill C. LaHue, Asst. Atty. Gen., Jefferson City, for Respondent.

MONTGOMERY, Chief Judge.

After a jury trial, Gregory W. Watson (Appellant) was convicted of the class D felony of leaving the scene of a motor vehicle accident in violation of § 577.060.[1] He was subsequently sentenced as a persistent offender to seven years' imprisonment. Appellant appeals his conviction and sentence based upon three claims of trial court error.

1. Statutory references are to RSMo 1994 unless indicated otherwise.

On October 3, 1995, Appellant drove his car along North Ingram Road in Sikeston, Missouri. Appellant was driving the vehicle at approximately eighty miles an hour when he went off the road and hit "something." Appellant's vehicle sustained damage including a shredded left front tire, a bent wheel, a dented rear bumper and a broken rear window.

When Appellant drove home after the accident, he "came flying up the driveway" and asked his girlfriend, Kathleen Moreland, to move her car so he could park his vehicle in the rear of the property. Appellant parked the car with the front facing the roadway, concealing the damage to the rear of the vehicle. Typically, Appellant approached the house carefully and parked in the front. Appellant informed Moreland he had been in an accident and had wrecked the back end of his car, but he did not know what he hit. Appellant asked Moreland to drive him to the scene of the accident to see what he had hit.

Moreland drove Appellant to North Ingram Road. When they got to the scene, they saw a utility truck and another truck next to a green box that had been damaged and knocked off its concrete base. Appellant said the green box must have been what he hit. Appellant became agitated when Moreland turned the car around and slowly drove by the scene again.

Moreland drove Appellant back to the home they shared with Appellant's mother. At some point in the evening Appellant got into an argument with his mother over money. Appellant was upset because he had wrecked his car and wanted money from his wheelchair-bound mother to pay previous court fines.[2] When his mother refused to turn over her social security check for these purposes, Appellant assaulted her. When the argument escalated, Moreland called the police.

Officer Mike Allen responded to the call concerning a disturbance at Appellant's residence. Allen noted a damaged vehicle parked in the back of the property. Moreland told Allen about the accident and directed him to the scene on North Ingram Road.

Allen contacted Trooper Stephen Jarrell and informed him that he had located the vehicle that was involved in the accident on North Ingram Road.

Earlier in the afternoon Trooper Jarrell had investigated the accident scene on North Ingram Road. When he arrived on the scene, Jarrell noted scuff marks and yaw marks, an indication of tires sliding on asphalt, running into the curve and off the road. A Union Electric (UE) employee at the scene told Jarrell that a power outage occurred around 3:30 p.m. When the UE employee arrived on the scene, he discovered the transformer had been destroyed, along with a telephone box and a cable box.

Jarrell noted skid marks into the boxes. The length of the skid marks indicated the vehicle had been exceeding the speed limit. Jarrell found tire fragments, debris from safety glass commonly used in vehicle windows, and motor vehicle fluid indicating a rupture in the undercarriage of a vehicle. Reddish paint had been transferred to one of the destroyed boxes.

After speaking with Officer Allen, Trooper Jarrell went to Appellant's home. Officer Allen pointed out Appellant's vehicle, a 1982 Camaro with deep maroon and primer-colored paint. Jarrell noted that the damage to the rear bumper was consistent with striking the transformer. The bumper was creased by a sharp edge similar to the edge on the transformer. The rear windshield glass was missing. The fragments of glass in the back of the car were consistent with the glass fragments found at the accident scene. The driver's side front tire was shredded. Moreland told Jarrell that Appellant had left the house around 3:20 that afternoon and returned approximately twenty minutes later with the car in this condition.

At the Department of Public Safety, Officer Jarrell questioned Appellant about the accident. Appellant admitted he had been in an accident on North Ingram Road. Although Appellant claimed he did not know what he hit, he admitted he could have hit the transformer, cable box and telephone box. At

---

**2.** Appellant correctly urges that the record does not support the State's contention that Appellant

sought money to repair the car damage from the accident in question.

trial, a UE representative testified that Appellant completely destroyed the transformer and the total cost of repair was $1,884.37.

We first address Appellant's Point II. He contends the trial court erred in overruling his motion for judgment of acquittal at the close of evidence and in entering a judgment and sentence based upon the jury's verdict because there was insufficient evidence to establish that Appellant left the scene of an accident knowing that he had caused property damage.

■■■ "When reviewing the sufficiency of evidence, we consider all the evidence and its inferences in a light most favorable to the verdict, and we reject all contrary evidence and inferences." *State v. Parrish,* 852 S.W.2d 426, 428 (Mo.App.1993). This court does not weigh the evidence nor determine its reliability or the witnesses' credibility. *Id.* Our review " 'is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.' " *State v. Grim,* 854 S.W.2d 403, 405 (Mo.banc 1993) (quoting *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989)).

Section 577.060.1, upon which the conviction was based, is set forth marginally.[3] "The offense of leaving the scene of a motor vehicle accident is complete when the defendant, knowing a person has been injured [or damage has been caused to property], drives on without giving the required information." *State v. Collins,* 875 S.W.2d 247, 248 (Mo. App.1994).

Appellant does not deny he caused the accident on North Ingram Road, nor does he suggest the accident did not cause the property damage in question. Rather, Appellant maintains there was no evidence showing he had knowledge of causing property damage at the time he left the scene of the accident. We disagree.

■■ Appellant severely damaged his car when he hit the transformer, cable box and telephone box. He hit these objects with enough force to knock the transformer off of its concrete base and to blow out his tire, rupture the undercarriage of his car, and break out his rear windshield. Although Appellant usually "babied" his car, Appellant drove home with the car leaking fluid and with a shredded tire on a bent wheel rim.

After Appellant came speeding up his driveway, he asked his girlfriend to move her car so he could park in the rear of the property. He usually drove more slowly and parked in front. Appellant parked with the back of his vehicle hidden from view.

Appellant had Moreland promptly drive him back to the scene of the accident. When he saw the destroyed transformer, Appellant admitted that it must have been what he hit. He made no attempt to notify UE workers or the police to acknowledge his responsibility. Instead, he became angry when Moreland drove by the scene slowly.

Appellant's behavior indicated he was aware he caused property damage. His rapid departure from the scene without first determining the exact nature of the damage infers he knew property damage occurred. Furthermore, Appellant cannot deny he knew the nature of the damage after he drove back to the scene to investigate, yet he still made no attempt at notification. Accordingly, the State presented sufficient evidence from which a reasonable juror could have found that Appellant knew he caused property damage when he left the scene of the accident without the proper notification. Point II is denied.

We now address Appellant's Point I, in which he claims the trial court abused its discretion in overruling Appellant's "motion in limine regarding the introduction of evi-

3.  **577.060. Leaving the scene of a motor vehicle accident.—1.** A person commits the crime of leaving the scene of a motor vehicle accident when being the operator or driver of a vehicle on the highway or on any publicly or privately owned parking lot or parking facility generally open for use by the public and knowing that an injury has been caused to a person or damage has been caused to property, due to his culpabili-

ty or to accident, he leaves the place of the injury, damage or accident without stopping and giving his name, residence, including city and street number, motor vehicle number and driver's license number, if any, to the injured party or to a police officer, or if no police officer is in the vicinity, then to the nearest police station or judicial officer.

dence concerning his assault on his mother, in overruling [Appellant's] objection to the evidence at trial, and in failing to grant [Appellant's] motion for mistrial . . . in that this evidence was irrelevant to any issue at trial and highly prejudicial to [Appellant]." Review of this point requires a brief account of the events at trial concerning this issue.

Prior to trial, defense counsel filed a motion in limine to exclude any evidence concerning Appellant's assault upon his mother. The State argued such evidence could be introduced because the investigation linked to the assault at Appellant's home led to the evidence that he had been involved in the accident on North Ingram Road. The State also maintained that Appellant's assault upon his mother after she denied him the money to repair his car was evidence that he knew he had caused property damage during the accident and wanted to cover up his crime. The court agreed. While overruling the motion the court stated, "I think we should not mention he slapped his mother. You can mention there was a disturbance."

During its opening statement, the State noted that on the evening of the accident an officer responded to a disturbance at Appellant's home. Defense counsel renewed his objection to this evidence and the objection was overruled. The State went on to say:

> At that residence they came into contact with [Appellant]. [Appellant] had been having an argument with his mother, Nedra Watson. Nedra Watson is an individual who is confined to a wheelchair. At that point in time, the evidence will be, ladies and gentlemen, that she suffered assault at the hand of [Appellant] in which he was wanting out of her, her social security money.

The State's first witness was Officer Allen. During his testimony, Officer Allen repeatedly referred to the assault upon Appellant's mother. After defense counsel objected to the use of the word "assault," the court advised Officer Allen to use the word "altercation to avoid unduly prejudicing this jury."

During the remainder of his testimony, Officer Allen went on to relate a conversation he had with Appellant, in which Appellant denied hitting his mother but admitted pushing her in her wheelchair into another room. Officer Allen testified that he could not get a lot of information from the victim "because of her diminished—" This was an apparent reference to the severity of her injuries.

Another State witness, Kathleen Moreland, made numerous references to the assault during her testimony. During a side-bar, defense counsel informed the court he believed there would be more references to the assault and stated, "Enough of this trial has been on that, and I think there is nothing probative in having her testify to that at this time." The court responded by ensuring that the witness had been instructed to refer to the incident as an altercation.

Moreland testified that she called the police to Appellant's home because "he had started hitting on his mother[.]" She further testified, "When he started in on her, I tried to intervene." Moreland again said, "I called [the police] there for him hitting on his mother . . ." After defense counsel asked the court to instruct the State and the witness to comply with the prior order, referring only to an "altercation," the court responded, "Let's don't refer to the altercation. It has nothing to do with the matters before us today . . . ."

At the close of evidence, defense counsel made a motion for mistrial based upon the introduction of evidence of "prior bad acts" by Appellant. This motion was denied.

■ A criminal defendant has the right to be tried only for the crimes for which he has been charged. *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo.banc 1989). Trial courts should be wary of evidence concerning other crimes because of the prejudicial nature of such evidence. *State v. Helm*, 892 S.W.2d 743, 745 (Mo.App.1994). The difficulty with evidence of other crimes is that it tends to run counter to the rule that prevents using a defendant's character as the basis for inferring guilt. *State v. Dudley*, 912 S.W.2d 525, 528 (Mo.App.1995).

The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of

the defendant to commit such crimes. There are exceptions to the rule. Evidence of prior misconduct of the defendant, although not admissible to show propensity, is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect. The balancing of the effect and value of evidence rests within the sound discretion of the trial court.

*State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993) (citations omitted).

■ Generally, evidence of other, uncharged misconduct is admissible if it tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; and (5) the identity of the person charged with the commission of the crime at trial. *Id.*

■ Finally, the prosecution is not permitted to introduce evidence of the circumstances of the defendant's arrest where such circumstances have no probative value. *State v. Chambers*, 898 S.W.2d 119, 123 (Mo. App.1995).

■ In the instant case, the State initially convinced the trial court the evidence that Appellant had assaulted his wheelchair-bound mother was necessary to show why the police came to arrest him. Clearly, this evidence does not fall within any of the five exceptions enumerated in *Bernard* nor does this evidence have probative value as to any issue in the case. Furthermore, after the State and its witnesses repeatedly referred to the assault, even the trial court became convinced this evidence was not probative as evidenced by its comment that the altercation "has nothing to do with the matters before us today." Without question, the court concluded this evidence had no legitimate tendency to directly establish Appellant's guilt of leaving the scene of the accident. We believe the evidence that Appellant assaulted his mother had such limited probative value in the face of its highly prejudicial nature that the trial court erred in its admission. Our review, however, does not end with this determination.

Harmless error in the admission of evidence does not warrant reversal of a conviction. Error in the admission of evidence is harmless "only if we are 'able to declare a belief that it was harmless beyond a reasonable doubt.' " "To sustain a claim that error in the admission of evidence is harmless, the record must demonstrate 'that the defendant was not injured by the error as by showing that the jury disregarded or could not have been influenced by the evidence.' "

*Chambers*, 898 S.W.2d at 123 (citations omitted.)

■ This Court is convinced the record demonstrates Appellant was harmed by the admission of evidence that he assaulted his wheelchair-bound mother in order to take her social security money. The testimony concerning the assault was extensive. Although Officer Allen testified Appellant denied hitting his mother, Moreland and Allen repeatedly testified concerning the assault. In our view, the cumulative effect of this testimony clearly had to have had an impact on the jury.

There is nothing in the record to indicate that the jury disregarded this information or could not have been influenced by it. We therefore determine that the trial court prejudicially erred in allowing the admission of this evidence and in denying defense counsel's motion for mistrial.

Because Point I is ruled in Appellant's favor, we decline to review Point III which alleges trial court error relating to the State's closing argument.

We have determined the State made a submissible case disregarding the improperly admitted evidence. Therefore, the proper remedy is reversal and remand for new trial. *See State v. Wideman*, 940 S.W.2d 18, 20–21 (Mo.App.1997).

The judgment of conviction and sentence is reversed, and this cause is remanded for

further proceedings consistent with this opinion.

PARRISH, P.J., and SHRUM, J., concur.