

# In the Missouri Court of Appeals
# Eastern District

DIVISION TWO

| | |
|---|---|
| STATE OF MISSOURI, | ) No. ED100483 |
| | ) |
| Plaintiff/Respondent, | ) Appeal from the Circuit Court |
| | ) of the City of St. Louis |
| v. | ) |
| | ) Hon. Rex Burlison |
| CARLOS PERRY, | ) |
| | ) |
| Defendant/Appellant. | ) Filed:  September 23, 2014 |

## Introduction

Carlos Perry (Appellant) appeals from the trial court's judgment entered upon a jury

verdict convicting him of three counts of possession of a controlled substance.  We affirm.

## Factual and Procedural Background

On August 27, 2010, Appellant ran a stop sign while driving alone in his girlfriend's car,

as witnessed by two St. Louis Metropolitan police officers in a police car, Officer Brent Fincher

and Officer Thomas Schaab.  The officers did not activate their lights or siren but followed

Appellant to a convenience store.  Appellant went into the convenience store.  After Appellant

got back in the car and drove away from the store, the officers followed him.  Appellant made a

turn, failing to signal, and ran another stop sign.  The officers pulled Appellant over, and noticed

him fumbling with something near the passenger side door.  After the officers approached the car

and asked for his identification, Appellant gave them his Missouri state identification.  The

officers observed Appellant to be very nervous. They asked him to step out of the car and patted him down. After checking Appellant's name and the car's license plate, the officers discovered Appellant had several outstanding warrants, and the car was registered to a woman Appellant stated was his girlfriend. Officer Fincher placed Appellant under arrest for the outstanding warrants and patted him down again, searching his pockets this time. In his pockets, Officer Fincher found a roll of money totaling $815 and a baggie containing three smaller baggies each containing, respectively, a small amount of heroin, a small amount of cocaine, and two hydrocodone pills. Officer Fincher arrested Appellant for the drugs, put him in the back seat of the police car, then searched his car. The officers found no other drugs or any weapons, but in the glove compartment discovered $4000 in cash. Officer Fincher placed the contraband and cash in the trunk of the police car and they took Appellant to the police station.

On August 27, 2010, Appellant was charged by indictment with three counts of possession of a controlled substance pursuant to Section 195.202.[1] Appellant filed a pretrial motion to suppress the drugs and money based on illegal search and seizure that was denied. Appellant again objected to the admission of the drugs and money at trial; said objection was denied. Appellant made a continuing objection, which the trial court noted.

At trial, Officer Fincher testified about the events surrounding Appellant's arrest. Officer Schaab did not testify. During closing arguments, defense counsel argued Officer Fincher planted the drugs on Appellant so that the police could keep the money found in his vehicle. Defense counsel also commented on Officer Schaab's failure to testify at trial to corroborate Officer Fincher's rendition of the events as they transpired on the night of Appellant's arrest.

---

[1] All statutory references are to RSMo 2006, unless otherwise indicated.

In response, the State maintained to the jury that if there had been anything illegal about the stop and seizure, they would not be there that day. Appellant objected, and argued to the bench this statement invaded the province of the jury. The trial court sustained the objection and instructed the jury to disregard the statement. Appellant also moved for a mistrial, which was denied. With regard to the defense's comment on Officer Schaab's absence from the proceedings, the State said to the jury that it "didn't call the other officer because we didn't need to. He would testify to the same exact thing." Defense counsel objected, and argued to the bench that he wanted a mistrial because the State was arguing as to what a non-testifying witness would have testified, which was improper. The trial court sustained the objection as arguing facts not in evidence, and instructed the jury to disregard any statement made about what a witness who had not testified would have said. The trial court denied the motion for mistrial.

On March 13, 2013, the jury found Appellant guilty on all counts. On April 26, 2013, the trial court sentenced Appellant to ten years in the custody of the Department of Corrections, pursuant to the long-term drug treatment program. This appeal follows.

Points on Appeal

In his first point, Appellant claims the trial court erred in denying his motion to suppress and objection to the admission of the evidence resulting from the stop of his car as violative of his rights against unreasonable search and seizure and to due process of law, in that he was pulled over not for a mere traffic stop, but as the result of an investigatory stop without probable cause, reasonable suspicion or a warrant.

In his second point, Appellant asserts the trial court erred in denying his motion to suppress and objection to the admission of the evidence resulting from the search of his car, because this denial violated his rights against unreasonable search and seizure and to due process

3

of law, in that the officer could not justify a warrantless search of his car for his own safety after Appellant was handcuffed and locked in the back seat of the police car.

In his third point, Appellant contends the trial court abused its discretion when it failed to grant his motion for a mistrial because that denial violated his right to due process of law, in that the prosecutor argued that if there was anything illegal about the stop of the car Appellant was driving, there would not have been a trial that day. Appellant maintains this argument allowed the jury to infer that the trial court had already decided there was no issue with the legality of the stop of his car or the officer's conduct, interfering with his right to an impartial and unbiased jury and shifting the burden of persuasion.

In his fourth point, Appellant argues the trial court abused its discretion when it failed to grant his motion for a mistrial because that denial violated his right to due process of law in that the prosecutor stated facts not in the record and improperly vouched for the State's own witness by stating that Officer Schaab would have backed up Officer Fincher's version of events had he taken the stand, when Officer Schaab was never called or took the stand, and he was not legally unavailable.

In his fifth point, Appellant claims the trial court erred and abused its discretion when it refused to allow him to cross-examine Officer Fincher about the St. Louis Metropolitan Police Department special order regarding asset forfeiture, because not allowing this cross-examination violated his rights to due process of law and confrontation of witnesses, in that cross-examination would have allowed him to impeach Officer Fincher's credibility, level of training and experience. Appellant maintains the police department's policy regarding asset forfeiture, and Officer Fincher's knowledge of it, ability to follow it, and potential flagrant disregard of it directly related to the credibility of the officer as to the events surrounding his arrest.

4

## Discussion

### Points I and II- Search and Seizure

In his first two points, Appellant claims he was pulled over not for a mere traffic stop, but as the result of an investigatory stop without probable cause, reasonable suspicion or a warrant and the officer could not justify a warrantless search of his car for his own safety after Appellant was secured in the police car.

In our review of the trial court's denial of the motion to suppress, we look only to determine whether the evidence was sufficient to support the ruling. State v. Burkhardt, 795 S.W.2d 399, 404 (Mo.banc 1990). It is not this Court's province to substitute its discretion for that of the trial court, but instead from the record before us, which encompasses all the circumstances, we must decide only whether there was adequate evidence to support the trial court's action. Id. It is not required that the trooper be right in his belief the automobile contained contraband, only that such belief was reasonable. Id. The weight of the evidence and the credibility of the witnesses is for the trial court's determination. Id.

The decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. State v. Pike, 162 S.W.3d 464, 473 (Mo.banc 2005). Here, Officer Fincher had probable cause to believe that three traffic violations had occurred in that he observed Appellant run two stop signs and make a turn without signaling, so his decision to stop Appellant's vehicle was justifiable and legal. During a traffic stop, an officer may detain the vehicle for the time necessary to conduct a reasonable investigation of the traffic violation. State v. Hoyt, 75 S.W.3d 879, 882 (Mo.App. W.D. 2002). A reasonable investigation may include requesting the driver to sit in the patrol car, questioning the driver about his destination, and obtaining the driver's license, registration and insurance information. Id.

5

Once the investigation has concluded, the detainee must be allowed to proceed unless specific, articulable facts create an objectively reasonable suspicion that the individual is involved in criminal activity. Id. This suspicion must come about during the time necessary to effect the purpose of the stop. Id. Here, while pulling Appellant over, Officer Fincher observed Appellant make furtive movements toward the passenger side of the vehicle prior to stopping his vehicle. Officer Fincher also noted Appellant was very nervous when the officer was speaking to him. After running Appellant's name, several outstanding warrants were discovered. All of these factors constitute a basis for reasonable suspicion for the officers to further detain Appellant and search his vehicle. Burkhardt, 795 S.W.2d at 404. Probable cause may arise when the facts and circumstances within the knowledge of the seizing officer are sufficient in themselves to produce in a man of reasonable caution a belief that the contents of the automobile offend the law. State v. Hornbeck, 492 S.W.2d 802, 805 (Mo.1973). See also State v. Logan, 914 S.W.3d 806, 808 (Mo.App. W.D. 1995) (conviction upheld where officer pulled defendant over for weaving in traffic and then searched car after new basis arose because driver acted nervous, passengers told inconsistent stories about ownership of the vehicle); State v. Bunts, 867 S.W.2d 277, 280 (Mo.App. S.D. 1993) (continued detention and search were appropriate where during investigation, defendant was very nervous, shaking, moving in his seat, and his voice was cracking); Burkhardt, 795 S.W.2d at 404, citing Chambers v. Maroney, 399 U.S. 42, 51 (1970) (search of an automobile on the highways pursuant to probable cause to believe that contraband, weapons or evidence of a crime are within the automobile is well-established exception to the Fourth Amendment warrant requirement). We find the officers' detention and search of Appellant was constitutionally permitted, and the trial court did not err in denying Appellant's motion to suppress evidence and in admitting the evidence at trial.

6

Appellant maintains the search of his car and seizure of the drugs and money were illegal because the direct statement of the investigating officer was that he was attempting to make sure Appellant was in the car when he was issued a citation for running a stop sign, and the officer purposefully delayed making a lawful stop to issue a traffic citation to ensure that he was able to search the car without probable cause, reasonable suspicion or a warrant. However, Officer Fincher's intent or motive in stopping Appellant's vehicle is unimportant as long as his actions were lawful. Hoyt, 75 S.W.3d at 883. Here, we have determined his actions were legal from the initial stop of Appellant's car to the seizure of evidence within the car as well as Appellant's person. Accordingly, Points I and II are denied.

Points III and IV – Improper Closing Argument

In his third and fourth points, Appellant complains about the prosecutor's statements in closing argument that if there was anything illegal about the stop of the car Appellant was driving, there would not have been a trial, and that Officer Schaab would corroborate everything Officer Fincher recounted about the events of the stop and seizure.

A trial court's ruling regarding closing argument will not be overturned absent an abuse of discretion resulting in prejudice to the defendant. State v. Simmons, 944 S.W.2d 165, 178-79 (Mo.banc 1997). An abuse of discretion exists only where the prosecutor's statements are plainly unwarranted and clearly injurious to the defendant. Id. The trial court is in the best position to appraise the consequence of a closing argument, and has broad discretion to determine if the particular line of argument is proper. Titsworth v. Powell, 776 S.W.2d 416, 420 (Mo.App. E.D. 1989).

The trial court granted Appellant's objections to both of the challenged statements at trial and instructed the jury to disregard them. The trial court specifically instructed the jury to

disregard any reference to any witness that was not there or did not come in to testify, and to reach its verdict based on the evidence that was presented and the reasonable inferences that are drawn from the evidence. The court also specifically told the jury that the statement by the prosecutor as to any legality or illegality of the stop was improper, it was not an issue in the case, and they were to disregard it.

Appellant maintains these curative instructions or admonitions were not enough and the trial court should have granted a mistrial. A mistrial is a drastic remedy to be used only in the most extraordinary circumstances when there is a grievous error which cannot otherwise be remedied. State v. Davis, 122 S.W.3d 690, 692 (Mo.App. E.D. 2003). We review the trial court's refusal to declare a mistrial on an abuse of discretion standard because the trial court is in a superior position to determine the effect of improper remarks, and what, if anything, must be done to cure the problem. Id. at 692-93.

Improper statements by a prosecutor do not always require reversal of a conviction. State v. Ozier, 961 S.W.2d 95, 98 (Mo.App. E.D. 1998). An appellate court evaluates the facts of each case independently, and reverses a conviction only if the challenged comments had a decisive effect on a jury's verdict. Id. For a prosecutor's comments to have had a decisive effect, there must be a reasonable probability that, absent the comments, the verdict would have been different. Id.

Here, there is not a reasonable probability that the verdict would have been different had the State not made the comments complained of by Appellant. First, the trial court instructed the jury to disregard the comments. A jury is presumed to follow the instructions given by the trial court. Davis, 122 S.W.3d at 693. Second, parties are allowed wide latitude during closing arguments. State v. Rasheed, 340 S.W.3d 280, 286 (Mo.App. E.D. 2011). Finally, the

8

prosecutor's remarks were not made spontaneously but tailored to rebut particular arguments made by defense counsel in closing, *i.e.*, that the police had planted the drugs in Appellant's car so they could steal his money. The trial court found that the prosecutor's responses to defense counsel's statements went a bit too far in terms of suggesting special knowledge or commenting on a fact not in evidence, both of which are improper,[2] but did not go so far as to have a decisive effect on the jury such that a mistrial was warranted and thus delivered a curative instruction to the jury. We find no error in the trial court's decision. We find the trial court's curative measures appropriate in nature and degree to the State's comments in closing arguments, and that a mistrial was not warranted. Accordingly, Points III and IV are denied.

Point V – Asset Forfeiture

In his fifth point, Appellant claims the trial court erred and abused its discretion when it refused to allow him to cross-examine Officer Fincher about a St. Louis Metropolitan Police Department special order from the Chief of Police regarding asset forfeiture procedure. Appellant asserts such cross-examination would have allowed him to impeach Officer Fincher's credibility.

The trial court has broad discretion in deciding the scope of cross-examination. State v. Gaines, 316 S.W.3d 440, 447 (Mo.App. W.D. 2010). We will not interfere absent a clear abuse of discretion. Id. In matters involving admission of testimony, review is for prejudice, not mere error. Id. Reversal will result only if error was so prejudicial that it deprived defendant of a fair trial. Id.

Appellant's defense theory was that Officer Fincher framed him by planting drugs in his car so he could take Appellant's money through asset forfeiture. On direct exam, Officer

---

[2] Parties are allowed wide latitude during closing arguments; however, counsel may not stray beyond the evidence presented to the jury, suggest special or personal knowledge, or make ad hominem attacks designed to inflame the jury. Rasheed, 340 S.W.3d at 286.

9

Fincher testified that when he discovered the $4,000 in Appellant's car, he turned the money over to the asset forfeiture department. He testified after he turned the money in, he did not see it again. On cross-exam, defense counsel questioned Officer Fincher about asset forfeiture procedures to be followed when there is a certain amount of money discovered. Officer Fincher stated he was not altogether familiar exactly with the procedures, but he thought that when a certain amount of money is involved, the officer is supposed to call the asset forfeiture department to the scene. Specifically, the following was said:

[Defense counsel] Q: Officer Fincher, you are aware of the Metropolitan Police Department special orders regarding asset forfeiture, aren't you?
…
[Officer Fincher] A: I would say Sergeant Paul Bieniasz has a much more accurate –
Q: That's not my question.
A: Oh, you're right. Absolutely. I am not completely familiar with it, no.
Q: So you don't know what the procedures are for asset forfeiture?
A: I know you call them –
Q: What?
A: I said I know you call them if there's drugs or money involved and it's over, I think, what, $14,000. Not 14,000, but 1,400 or $1,600. There's a dollar amount, I'd have to look it up, you call them and ask them what to do.
Q: And, also, if the amount is over a certain amount of money, you're supposed to have assets actually come out to the scene; is that right?
A: Well, you would call them and ask them if they want to come to the scene. Ultimately, if they decide otherwise, you can't force them.
Q: If I were to give you a copy –
[The State] Objection, your Honor, lack of foundation. May we approach?

At the bench, the following was said:

[The State]: Judge, the officer has just said he's not familiar with the information that [defense counsel] is about to show him. He can't testify to it.
[Defense counsel]: Your Honor, I was going to try to refresh his recollection because it's a Metropolitan Police Department special order from the chief of police. I would think that the police officers would actually know what the proper procedures were.
[The State]: There's nothing to refresh his recollection about it, your Honor.
The Court: Why is this relevant?
[Defense counsel]: It's relevant because I think it goes towards the police officer's credibility and the fact that he – he's not –
The Court: Credibility on what?

10

[Defense counsel]: Credibility on seizing the money, and, I think, frankly, it goes towards the whole procedure and everything he's done. So I think his credibility about testifying truthfully under oath and what actually happened when he was at the scene, if he processed that scene properly.

[The State]: Your Honor, the officer didn't even seize the money himself, that was done by asset forfeiture.

The Court: Yeah. The – you can ask him about those guidelines. My understanding, at this point, he said he's unaware of – you can't refresh a memory that he's already declared that he is unaware of. So I think that's where we are right now. He said he's not familiar, other than that, you call him, so I don't believe you can refresh his memory when he doesn't have a memory to be recalled.

[Defense counsel]: One of the things he did testify to, he thought about certain amounts of money there was, I guess.

The Court: Why is the amount relevant when his testimony is that he called them? The point is that he called them, right? What's relevant about the amount of money?

[Defense counsel]: The point is that he called him, but according to this special rule that you're going to come to the scene, asset forfeiture to come to the scene.

The Court: Special rules that he's said he doesn't—he's not aware of.

[The State]: He's not the proper person to testify to the special orders.

[Defense counsel]: Well, he does sound like he's aware of some of it because he's providing information about amounts of money and what the procedure is. It's just he's providing it incorrectly.

[The State]: Then he's not the witness to give you the information.

The Court: I'm going to sustain the objection at this time.

The trial court did not abuse its discretion in limiting Appellant's cross-examination of Officer Fincher regarding his knowledge of the asset forfeiture special order, because while defense counsel stated he was attempting to refresh Officer Fincher's recollection, Officer Fincher repeatedly stated he had no recollection of the order to refresh. When asked if he was familiar with the special order, Officer Fincher testified that he was "not completely familiar with it, no." He did not testify he was familiar with it but having trouble remembering its contents. Therefore, there was nothing to refresh.

Also, Appellant did not submit the document itself as an offer of proof, nor did he attempt to lay a foundation for it and/or authenticate it (presumably as a business record) in order to submit it as such, which was the basis of the State's initial objection to it. Appellant's claimed missed opportunity to impeach Officer Fincher's credibility by proving his alleged

11

intentional violation of the department's special order regarding asset forfeiture by planting drugs on Appellant and stealing his money is baseless. There is no evidence in the record that Officer Fincher did anything other than turn over to the asset forfeiture department the money recovered with the drugs from Appellant's car. Defense counsel's failure to impeach Officer Fincher's testimony was not due to the trial court's ruling limiting cross-examination on the special order.

For these reasons, Point V is denied.

Conclusion

The judgment of the trial court is affirmed.

*Sherri B. Sullivan*

Sherri B. Sullivan, P.J.

Mary K. Hoff, J., and
Philip M. Hess, J., concur.