

# Missouri Court of Appeals

### Southern District

### Division Two

STATE OF MISSOURI,                )
                                  )
    Plaintiff-Respondent,         )
                                  )
v.                                )    No. SD33186
                                  )
NATHAN WAYNE JENSEN,              )    **Filed:  Aug. 27, 2015**
                                  )
    Defendant-Appellant.          )

APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

Honorable Gregory Warren, Circuit Judge

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

A jury found Nathan Wayne Jensen ("Defendant") guilty of murder in the second degree (Count I), armed criminal action (Count II), and abandonment of a corpse (Count III).  *See* sections 565.021, 571.015, and 194.425.[1]

Defendant's first point on appeal, which claims the trial court wrongly refused his request for an involuntary manslaughter instruction, is both meritorious and dispositive of counts I and II.  In conformity with the principles announced in two cases decided by our supreme court during the pendency of this appeal (***State v. Roberts***, No. SC94711, 2015 WL 4627393 (Mo. banc Aug. 4, 2015), and ***State v. Randle***, No. SC94646, 2015 WL 4627381 (Mo. banc Aug. 4, 2015)), we reverse the judgment in regard to those convictions and

---

[1] Unless otherwise indicated, all statutory references are to RSMo (2000).

remand the case for a new trial on those charges. Finding no merit in Defendant's other error claims, we affirm his conviction on Count III.

## Background

Defendant was accused of acting in concert with Christopher Jorgensen ("Jorgensen") to kill Kenny Stout ("Victim") with a baseball bat and/or knife and then knowingly abandon and dispose of Victim's corpse. Jorgensen had accepted a plea deal, and he testified for the State at Defendant's trial. Defendant claimed, *inter alia*, that his actions had been committed under duress.

In regard to the homicide charge, the trial court instructed the jury on murder in the first degree, murder in the second degree, and voluntary manslaughter.[2] The trial court refused Defendant's request to also include an instruction on involuntary manslaughter, believing that the refused instruction was "not required by the Supreme Court decisions as we know them at this time."

## Analysis

### *Point I – Involuntary Manslaughter Instruction*

Defendant claims the trial court committed reversible error by refusing to instruct the jury on involuntary manslaughter because involuntary manslaughter "is a lesser[-]included offense of first degree murder[,]" citing section 562.021 and ***State v. Jackson***, 433 S.W.3d 390, 395 (Mo. banc 2014).[3] We agree.

In ***Roberts***, 2015 WL 4627393 at *2, and ***Randle***, 2015 WL 4627381 at *2, our supreme court stated:

---

[2] As to voluntary manslaughter, the trial court also instructed the jury on the affirmative defense of duress.
[3] Section 556.046.3, RSMo Cum.Supp. 2001, provides that a trial court must "instruct the jury with respect to a particular included offense only if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense." The state concedes that the first of those two requirements was met here.

"[T]he jury's right to disbelieve all or any part of the evidence, and its right to refuse to draw any needed inference, is a sufficient basis in the evidence to justify giving any lesser included offense instruction when the offenses are separated only by one differential element for which the state bears the burden of proof." Lesser-included offenses that are separated from the greater offense by one differential element for which the State bears the burden of proof are referred to as "nested" lesser-included offenses. A "nested" lesser-included offense consists of a subset of the elements of the greater offense. Consequently, "it is *impossible to commit* the greater without *necessarily committing* the lesser." A defendant is entitled, upon proper request, to an instruction on a "nested" lesser-included offense and, therefore, does not have to introduce affirmative evidence or "cast doubt" over the state's evidence in any way.

(quoting *Jackson*, 433 S.W.3d at 401-02 and 404 (internal citations omitted)).

A person commits murder in the second degree if he or she "'[k]nowingly' causes the death of another person[.]" Section 565.021.1(1). In contrast, a person commits involuntary manslaughter in the first degree if he or she "'[r]ecklessly' causes the death of another person[.]" Section 565.024.1(1). "[T]hese different *mens rea* requirements are differential elements on which the State bears the burden of proof." *Roberts*, 2015 WL 4627393 at *2; *Randle*, 2015 WL 4627381 at *2. The remaining element of both offenses, causing the death of another person, remains the same. *See id.* Accordingly, involuntary manslaughter is a "nested" lesser-included offense of murder in the second degree.

Section 562.021.4 provides that "[w]hen recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly." "Therefore, proof that [Defendant] committed second-degree [murder] by "'knowingly'" causing [the death of Victim] necessarily means there was also a basis in the evidence for the jury to convict [Defendant] of [first-degree involuntary manslaughter] by "'recklessly'" causing [the death of Victim]." *Roberts*, 2015 WL 4627393 at *2; *Randle*, 2015 WL 4627381 at *2.

3

We must also reject an argument the State made in this case that was not explicitly addressed in the *Roberts* and *Randle* opinions. Based on the fact that the jury here was instructed on the lesser-included offense of voluntary manslaughter in addition to murder in the second degree, the State cites several cases for the proposition that "[t]he failure to give a different lesser-included offense instruction is neither erroneous nor prejudicial when instructions for the greater offense and *one* lesser-included offense are given and the defendant is found guilty of the greater offense." *See, e.g.*, *State v. Johnson,* 284 S.W.3d 561, 575 (Mo. banc 2009); *State v. Glass,* 136 S.W.3d 496, 515 (Mo. banc 2004); *State v. Johnston,* 957 S.W.2d 734, 751-52 (Mo. banc 1997). Because Defendant was convicted of murder in the second degree, not voluntary manslaughter, the State argues that the voluntary manslaughter instruction sufficiently tested the "firmness" of the jury's verdict.

As an initial matter, assuming that the general rule cited by the State remains viable in the wake of *Roberts* and *Randle*, the rule does not apply "where the lesser offense that was actually submitted at trial did not 'test' the same element of the greater offense that the omitted lesser offense would have challenged." *Briggs v. State*, 446 S.W.3d 714, 720 n.9 (Mo. App. W.D. 2014). Here, both the second-degree murder and voluntary manslaughter instructions asked the jury to determine whether Defendant "knew or was aware" that his conduct was practically certain to cause the death of Victim. These instructions differed not on the question of whether Defendant acted "knowingly" or "recklessly" but on whether Defendant had acted under the influence of "sudden passion[.]" Consequently, the voluntary manslaughter instruction did not "test" whether Defendant had acted "recklessly" instead of

4

"knowingly." *See **State v. Frost***, 49 S.W.3d 212, 220-21 (Mo. App. W.D. 2001); *see also* section 562.016.[4] Thus, ***Johnson***, ***Glass***, and ***Johnston*** are inapplicable here.

Point I is granted, and we reverse Defendant's conviction for second-degree murder, along with his related conviction for armed criminal action. *See **Roberts***, 2015 WL 4627393 at *3 (vacating the second-degree domestic assault and witness tampering convictions that were based on the underlying assault conviction); ***Randle***, 2015 WL 4627381 at *3 (vacating the second-degree assault and armed criminal action convictions that were based on the underlying assault conviction); *see also **State v. Owns***, 270 S.W.3d 533, 540 (Mo. App. W.D. 2008) ("[W]here a finding of guilt on one count *depends on* the jury's verdict on another count, acquittal of the predicate crime precludes conviction of the dependent offense").

Our disposition of this point does not mandate a reversal of Defendant's conviction for abandonment of a corpse because that conviction was not predicated on the second-degree murder conviction. *See* section 194.425.[5] We therefore turn to an examination of Defendant's remaining points.

---

[4] Section 562.016 provides, in pertinent part:

> 3. A person **"acts knowingly"**, or with knowledge,
>
> (1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or
>
> (2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.
>
> 4. A person **"acts recklessly"** or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

[5] Section 194.425.1 provides: "A person commits the crime of abandonment of a corpse if that person abandons, disposes, deserts or leaves a corpse without properly reporting the location of the body to the proper law enforcement officials in that county."

5

*Point II – Witness Testimony "Allowed"*

Defendant claims the trial court erred in "allowing the jury to consider" certain statements made by Shon Gossett ("Gossett"), a friend of Victim and witness for the State. The following facts are relevant to this point.

During the State's case-in-chief, the prosecutor elicited testimony that Gossett and Victim had been engaged in a "texting war" with Defendant a couple of weeks prior to Victim's death. When asked to explain the nature of this feud, Gossett replied that "[Defendant] was messing with my 16-year-old cousin[.]" Defense counsel promptly objected on the ground that such testimony constituted inadmissible evidence of "prior bad acts[,]" and the trial court sustained the objection. No further relief was requested.

Later, during redirect, Gossett was asked whether he knew Defendant's age at the time of the crime, to which Gossett replied, "I knew that he was too old to be with my 16-year-old cousin." Defense counsel started to object, but before the objection could be made, the prosecutor asked Gossett if he knew Jorgensen's age, and Gossett replied, "I don't know." Defense counsel asked to approach the bench and requested a mistrial. The prosecutor apologized for the unexpected answer from the witness, but he suggested that any prejudice could be "cured with an instruction to the jury to disregard it[.]" The trial court denied a mistrial, but it did give the following admonition to the jury: "Defense counsel's objection is sustained. The jury will disregard the last statement by the witness in total, the last sentence that he made."

Although he voiced no complaint at the time, Defendant now contends that the aforementioned facts constituted reversible error by way of a two-pronged argument. First, Defendant argues that Gossett's statements were inadmissible evidence of "uncharged

6

misconduct[.]" Defendant next argues that the trial court's admonition to the jury to disregard "the last sentence [Gossett] made" failed to cure the alleged error. This is because, as Defendant now notes, Gossett's last sentence was actually "I don't know." We find no merit in this claim.

The record illustrates that Gossett provided no explanation as to what his phraseology—"messing with" or too old "to be with"—was meant to convey. "Vague references to other uncharged crimes are insufficient to warrant reversal for trying a defendant for uncharged crimes." *State v. Slagle*, 206 S.W.3d 404, 410 (Mo. App. W.D. 2006). "The defendant's association with other crimes must be clear and definite to run afoul of the general rule of inadmissibility." *Id.* Thus, the first prong of Defendant's argument (that Gossett's challenged statements were inadmissible evidence of other crimes) fails.[6] As a result, we need not address the adequacy of the trial court's curative response. Point II is denied.

*Point III – Sidebar Comments by the Prosecutor*

Defendant asserts trial court error in connection with certain comments the prosecutor made during a sidebar that Defendant claims were overheard by the jury. The following facts are relevant to this point.

At a sidebar during Jorgensen's testimony, the prosecutor announced that he intended to ask whether Defendant "acted or portrayed himself as a gangster[,]" stating that

---

[6] The cases relied on by Defendant are inapposite in that they involve situations where evidence of a clearly defined crime, unrelated to the crime or crimes charged, were admitted at trial over the defendant's objection. *See, e.g.*, *State v. Watson*, 968 S.W.2d 249, 253 (Mo. App. S.D. 1998) (finding that evidence that defendant had assaulted his mother was not relevant and prejudicial where defendant was charged with leaving the scene of an accident); *State v. Taylor*, 739 S.W.2d 220, 223 (Mo. App. S.D. 1987) (finding that evidence that defendant had assaulted his girlfriend was not relevant and prejudicial where defendant was charged with manufacturing and possessing marijuana). Another case cited by Defendant, *State v. Milligan*, 654 S.W.2d 204, 208 (Mo. App. W.D. 1983), is inapposite in that it did not involve uncharged misconduct; rather, it involved inadmissible character evidence, which was not the basis for Defendant's objection here.

"[Defendant]'s got gangster tattoos all over him." The trial court, responding to an objection by defense counsel, concluded that this would amount to inadmissible character evidence. Later, Defendant's co-counsel, who had remained seated at counsel table during the sidebar, told the trial court that the prosecutor's statements had been "loud and clear" to the jury.

The trial court expressed concern that "comments from both sides have been loud enough that the jury on occasion could hear, and it worried me." Defense counsel agreed that the jury should not be asked whether or not they heard the prosecutor's statements, as that would serve to emphasize the statements. And when the trial court suggested that it emphasize to the jury that nothing said in side-bars was evidence and that the jurors who heard anything should disregard it, defense counsel responded, "Thank you, Judge. I appreciate that."[7]

Defendant now contends that the trial court erred in failing, *sua sponte*, to declare a mistrial. Acknowledging that this claim of error is unpreserved, Defendant requests Rule 30.20 review for plain error. Plain error is error that is "evident, obvious and clear." ***State v. White***, 92 S.W.3d 183, 189 (Mo. App. W.D. 2002), and unless we determine that Defendant's claim facially establishes substantial grounds for believing that a manifest

---

[7] The suggested admonition was then given to the jury in the following form:

> Ladies and gentlemen of the jury, I -- in the original instructions I mentioned that there would be conferences with the Court from time to time. And the attorneys, we don't have a real great place for that to take place.
>
> When the attorneys approach the Bench, they're trying to be quiet and keep the matters so the jury can't hear. But there's nothing said by either the - - any of the attorneys during those sidebars that is to be considered as evidence. It is not testimony, it is not evidence, unless someone under oath on the witness stand says it or there's an agreed stipulation by the attorneys.
>
> So I want to be sure you remember that part of the instructions. And the attorneys and the Court will try to keep those to a minimum and keep the matters from being overheard by the jury.

No objection to the form of this admonition was raised at trial.

8

injustice or miscarriage of justice has occurred, we will not exercise our discretion to conduct such a review. *State v. Thesing*, 332 S.W.3d 895, 899 (Mo. App. S.D. 2011).

Defendant has failed to make the requisite showing. For one, Defendant's argument is based on a presumption that the jury actually overheard the specific comments at issue.[8] In any event, even if we assume that the jurors overhead the comments, they were instructed to disregard them. We presume that the jury properly followed the trial court's instructions when it rendered its verdict, *State v. Chavez*, 128 S.W.3d 569, 578 (Mo. App. W.D. 2004), and Defendant has identified nothing in the record to suggest that the presumption is unwarranted in this case.

Because Defendant's claim does not facially establish substantial grounds for believing that a manifest injustice or miscarriage of justice has occurred, our inquiry ends. *Thesing*, 332 S.W.3d at 899. Point III is denied.

*Point IV – A Witness's Emotional Outburst*

Defendant's final point claims the trial court erred in denying his request for a mistrial after an emotional outburst by Victim's mother while testifying at trial. The following facts are relevant to this point.

On the first day of trial, the prosecutor showed Victim's mother an exhibit that contained a split screen image: a picture of Victim while alive next to another picture of Victim after his death. Upon viewing the exhibit, Victim's mother said, "Oh my God[,]" and she began to cry. The prosecutor apologized, and the trial court recessed the proceedings. Defense counsel requested a mistrial, stating, "I believe [the exhibit] was purposely used to

---

[8] Reversing his position at trial, Defendant also complains that the trial court did not question the jurors about what they might have heard. We disregard this argument as defense counsel expressly agreed at trial that doing so would only serve to emphasize the prosecutor's comment to the jury. Such an affirmative acquiesce to an action by the trial court waives even plain-error review. *See State v. Johnson*, 284 S.W.3d 561, 582 (Mo. banc 2009).

9

evoke an inflammatory response." The trial court denied the request for a mistrial, observing that Victim had to be identified and finding that the exhibit had not been intentionally used to evoke an emotional response.

When the proceedings resumed, the prosecutor did not display the exhibit to Victim's mother again. Based on what she had already observed, she identified Victim. Victim's mother then apologized for her outburst, stating, "I'm sorry. I thought I could do this."

We begin by noting that "[a] mistrial is a drastic remedy to be used only in the most extraordinary circumstances when there is a grievous error which cannot otherwise be remedied." *State v. Perry*, 447 S.W.3d 749, 754-55 (Mo. App. E.D. 2014). This court "review[s] the trial court's refusal to declare a mistrial on an abuse of discretion standard because the trial court is in a superior position to determine the effect of improper remarks, and what, if anything, must be done to cure the problem." *Id.* "Although emotional outbursts are to be prevented insofar as possible, the trial court exercises broad discretion in determining the effect of such outbursts on the jury." *State v. Deck*, 994 S.W.2d 527, 539 (Mo. banc 1999).

Defendant argues that a mistrial was warranted here because the prosecutor failed to prepare Victim's mother for the exhibit in order to "purposefully evoke an emotional response[.]" As earlier noted, this argument is contrary to the record and the trial court's findings. After the trial court recessed, allowing Victim's mother to compose herself, she apologized and stated that she "thought [she] could do this." This statement, contrary to Defendant's argument, implies that Victim's mother was prepared prior to her testifying. Her outburst was spontaneous and isolated, and she proceeded to identify Victim without

10

further incident or reference to the exhibit.  The trial court acted within its broad discretion in denying Defendant's request for a mistrial on this record.[9]  Point IV is denied.

## Decision

Defendant's conviction and sentence for abandonment of a corpse (Count III) is affirmed.  Defendant's convictions for murder in the second degree (Count I) and armed criminal action (Count II) are reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.


DON E. BURRELL, J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. - CONCURS

GARY W. LYNCH, J. - CONCURS

---

[9] In determining whether to declare a mistrial because of an emotional outburst, "the trial court may consider the spontaneity of the outburst, whether the prosecution was at fault, whether something similar, or even worse, could occur on retrial, and the further conduct of the trial."  **State v. Brooks**, 960 S.W.2d 479, 491 (Mo. banc 1997).